# UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **MARJORIE TAYLOR GREENE**, an individual, | |
| *Plaintiff*, | |
| *v.* | |
| **MR. BRAD RAFFENSPERGER**, in his official capacity as Georgia Secretary of State, **MR. CHARLES R. BEAUDROT,** in his official capacity as an Administrative Law Judge for the Office of State Administrative Hearings for the State of Georgia, **JOHN DOE 1**, in his official capacity, and **GOVERNMENT ENTITY 1**, | **Civ. No.** |
| *Defendants*. | |

# Plaintiff's Memorandum in Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**

## Summary of the Nature of the Case

The fundamental right of an individual to run for political office; to not be subject to an unjustified investigation and a requirement to "prove" her innocence; the proper role of Congress and the States in determining the qualifications of a Member of Congress; and, ultimately, whether state bureaucrats or voters will determine who is elected to Congress are at stake in this litigation.

Plaintiff Rep. Marjorie Taylor Greene ("**Rep. Greene**") currently serves as a Member of the U.S. House of Representatives, for Georgia's 14th congressional district and is running for re-election. Several Challengers filed a Challenge with the Georgia Secretary of State ("**SOS**") against Rep. Greene. The Greene Challenge alleges that Rep. Greene "does not meet the federal constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office." The Greene Challenge was based upon claims that Rep. Greene "aided and engaged in insurrection to obstruct the peaceful transfer of presidential power, disqualifying her from serving as a Member of Congress under Section 3 of the 14th Amendment and rendering her ineligible under state and federal law to be a candidate for such office."

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                    1

Rep. Greene vigorously denies that she aided and engaged in insurrection to obstruct the peaceful transfer of presidential power, but this litigation is not based on Rep. Greene's factual defenses. Instead, this matter is before the court based upon various constitutional challenges to the Georgia Challenge Statute itself.

The Challenge Statute's provision violates Rep. Greene's First Amendment rights by allowing a Challenge to Rep. Greene's "qualifications" to be a Candidate for Congress to be based upon only a written statement detailing the "reasons why the elector believes the candidate is not qualified."

Furthermore, based only on this "belief," the Challenge Statute shifts the burden of proof to Rep. Greene to prove a negative (i.e., that she did not engage in insurrection). This provision violates the Due Process Clause of the Fourteenth Amendment.

The Challenge Statute usurps Congress' constitutional responsibilities to determine the qualifications of its Members and thus violates Article 1, § 5 of the U.S. Constitution.

Finally, Congress used its constitutionally specified authority to remove the political disability found in Section Three of the Fourteenth Amendment from any

Representative other than those who served during the 36th and 37th Congresses. Rep. Greene is a Member of the 117th Session of Congress, so the 1872 Act removed any disability under Section Three from Rep. Greene, so the Challenge Statute is prohibited by federal law.

Because Rep. Greene is likely to succeed on the merits of her constitutional and federal law claims; she would be irreparably harmed by the unconstitutional and unlawful enforcement of the Challenge Statute; the balance of harms favors Rep. Greene; and the public interest is served by enjoining unconstitutional statutes, this Court should enjoin the Secretary of State from enforcing the Challenge Statute.

## Statement of Facts

### Challenge Statute

Under Georgia law, any elector  ("**Challenger**") who is eligible to vote for a Candidate may "challenge the qualifications of the candidate by filing a written complaint with the Secretary of State giving the reasons why the elector believes the candidate is not qualified to seek and hold the public office for which she or she is offering."("**Challenge**") O.C.G.A. § 21-2-5(b). A Challenge must be filed

with the Secretary of State within two weeks after the deadline set for candidates

to qualify. *Id.*  The Challenger must file a "written complaint with the Secretary of

State giving the reasons why the [Challenger] believes the candidate is not

qualified to seek and hold the public office for which she or he is offering. *Id.*

## Challenge Process

### A.  Notification and Request for Hearing

Once a Challenger files a Challenge under Georgia law, the Secretary of State

must "notify the candidate in writing that her or her qualifications are being

challenged and the reasons therefor and shall advise the candidate that she or she

is requesting a hearing on the matter" before an administrative law judge ("**ALJ**")

at the Office of State Administrative Hearings ("**OSAH**"). *Id.* ("**Challenge**

**Hearing**"). Service of this notice must be by first class mail, fax, e-mail, or

personal delivery. Ga. Comp. R. & Regs. 616-1-2-.11 Service by mail shall be

complete upon mailing by first class mail, with proper postage attached. *Id.*

### B.  Conduct of OSAH hearing and burden of proof

The Challenge Hearing before the ALJ will be conducted according to Georgia's

Administrative Procedure for the OSAH and according to rules and regulations

promulgated under that procedure. Ga. Code Ann. tit. 50, Ch. 13, art. 2, *et seq*.

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**            4

The ALJ for the OSAH has the power to:

- administer oaths and affirmations;
- sign and issue subpoenas;
- rule upon offers of proof;
- regulate the course of the hearing;
- set the time and place for continued hearings;
- fix the time for filing briefs;
- dispose of motions to dismiss for lack of agency jurisdiction over the subject matter or parties or for any other ground;
- dispose of motions to amend or to intervene;
- provide for the taking of testimony by deposition or interrogatory;
- reprimand or exclude from the hearing any person for any indecorous or improper conduct committed in the presence of the agency or the hearing officer;
- impose civil penalties; and
- "shall have all the powers of the ultimate decision maker in the agency with respect to a contested case."

O.C.G.A. § 50-13-41(a)(2), (b).

In the Challenge Hearing, the "entire burden" is placed upon the Candidate "to affirmatively establish her eligibility for office." *Haynes v. Wells*, 273 Ga. 106, 108-09 (2000). Within 30 days after the close of the record, the ALJ "shall issue a decision to all parties in the case." O.C.G.A. § 50-13-41(c). The ALJ's decision must "contain findings of fact, conclusions of law, and a disposition of the case." *Id.*

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                5

## C.  Secretary of State Review and Decision

After the ALJ issues a decision on the Challenge, the Secretary of State will review this decision—treating it as an initial decision under Georgia law. *Id.* at (d)(2). On review, the reviewing agency shall consider the whole record or such portions of it as may be cited by the parties. When reviewing the ALJ's initial decision, the Secretary of State "shall give due regard to the [ALJ's] opportunity to observe witnesses. If the [Secretary of State] rejects or modifies a proposed finding of fact or a proposed decision, it shall give reasons for doing so in writing in the form of findings of fact and conclusions of law." *Id.*

The Secretary of State has 30 days following the entry of the decision by the ALJ to "reject or modify such decision." *Id.* (d)(3). If the Secretary of State does not reject or modify the ALJ's decision within that 30 day period, the ALJ's decision is affirmed by operation of law. *Id.* Based upon the consideration of the ALJ's initial decision, the Secretary of State "shall determine if the candidate is qualified to seek and hold the public office for which such candidate is offering." O.C.G.A. § 21-2-5(c).

## D.  Effect of Secretary of State Disqualification

If the Secretary of State determines the Candidate is not qualified, she "shall

withhold the name of the candidate from the ballot or strike such candidate's name from the ballot if the ballots have been printed. If there is insufficient time to strike the candidate's name or reprint the ballots, a prominent notice shall be placed at each affected polling place advising voters of the disqualification of the candidate and all votes cast for such candidate shall be void and shall not be counted." *Id.*

### E. Appeals

Either the Challenger or the Candidate has the right to appeal the decision of the Secretary of State "by filing a petition in the Superior Court of Fulton County within ten days after the entry of the final decision by the Secretary of State." *Id.*(e). "An aggrieved party may obtain a review of any final judgment of the superior court by the Court of Appeals or the Supreme Court, as provided by law." *Id.*

The appellate review "shall be conducted by the court without a jury and shall be confined to the record. The court shall not substitute its judgment for that of the Secretary of State as to the weight of the evidence on questions of fact." *Id.* The court may modify or reverse the decision of the Secretary of State if "substantial rights of the appellant have been prejudiced because the findings, inferences,

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**          7

conclusions, or decisions of the Secretary of State are:

(1) In violation of the Constitution or laws of this state;

(2) In excess of the statutory authority of the Secretary of State;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

*Id.*

## Greene Challenge

Rep. Greene currently serves as a Member of the U.S. House of Representative, for Georgia's 14th Congressional District. Rep. Greene filed her candidacy, for the upcoming midterm elections, for Georgia's 14th congressional district on March 7, 2022.

On March 24, 2022, several Challengers filed a Challenge against Rep. Greene. Rep. Greene's candidacy filing used an out of date email address that is no longer regularly checked. Because of this, Rep. Greene did not receive actual notice of the Challenge from the Secretary of State until March 31, 2022.

The Greene Challenge stated that Rep. Greene "does not meet the federal

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**          8

constitutional requirements for a Member of the U.S. House of Representatives and is therefore ineligible to be a candidate for such office." Greene Challenge, ECF No. 1-1. The Greene Challenge was based upon claims that Rep. Greene "aided and engaged in insurrection to obstruct the peaceful transfer of presidential power, disqualifying her from serving as a Member of Congress under Section 3 of the 14th Amendment and rendering her ineligible under state and federal law to be a candidate for such office." *Id.*

The Greene Challenge has been referred by Sec. Raffensperger to ALJ Beaudrot at OSAH. As noted, Rep. Greene only received the Secretary of State's notice of the Challenge on March 31, 2022. *Supra*. In addition to their Challenge, Petitioners filed a notice to produce documents and a notice to take Rep. Greene's deposition. ECF Nos. 1-2, 1-3. Both of these notices were filed with ALJ Beaudrot on March 28, 2022, but not received by Rep. Greene until March 31, 2022. On March 30, 2022, ALJ Beaudrot ordered Rep. Greene to respond to Petitioner's motions by noon on April 4, 2022. Order Shortening Response Period, ECF No. 1-4. Because Rep. Greene did not receive actual notice of the Challenge from Sec. Raffensperger and the notices and orders from ALJ Beaudrot until March 31, 2022, the earliest date in which she could file this matter in this Court is today,

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**          9

April 1, 2022.

The Georgia Primary Election is scheduled to take place on May 24, 2022.[1] Counties may begin mailing absentee ballots as soon as April 25, 2022. *Id.* These ballots have to be printed in advance of mailing. As a practical matter, it is virtually impossible to fully adjudicate the Greene Challenge, including all appeals as of right, before at least these absentee ballots are printed, and likely not before they are mailed.

Rep. Greene vigorously denies that she "aided and engaged in insurrection to obstruct the peaceful transfer of presidential power," but this litigation is not based in Rep. Greene's factual defenses. Instead, this matter is before the Court based upon various constitutional and legal challenges to the Georgia Challenge Statute itself and its application here.

## Argument

## I. Greene has standing.

For there to be a case or controversy under Article III, the plaintiff must have a "personal stake" in the case—in other words, standing. *TransUnion LLC v.*

---

[1]https://sos.ga.gov/sites/default/files/forms/2022%20State%20Scheduled%20Elections%20Short%20Calendar.pdf

**Pl.'s Mem. in Supp. of TRO and Prelim. Inj.**                    10

*Ramirez*, 141 S. Ct. 2190, 2203 (2021). As a candidate for Congress, Rep. Greene is subject to the Challenge Statute's provisions, and in fact, was challenged under the statute. For a plaintiff to establish standing under Article III, she must (1) have suffered an "injury in fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Rep. Greene meets all three Article III standing requirements under *Lujan*.

## A. Rep. Greene has an injury in fact.

In order to have an injury in fact, a plaintiff must have an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not conjectural or hypothetical," *Id.* at 560 (internal quotations and citations omitted).

Rep. Greene is subject to the Challenge Statute. If successful, a Challenge to her candidacy would prevent her from running for Congress. Citizens have a constitutionally protected right to run for public office. *Cook v. Randolph Cty.*, Ga., 573 F.3d 1143, 1152 (11th Cir. 2009), which is quintessential First Amendment activity. Rep. Greene's potential injury is not in any way

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                    11

hypothetical—not only is she subject to the Challenge Statute, a Challenge was recently filed against her. The Secretary of State has the power to prevent Rep. Greene's name from appearing on the ballot, if a Challenge against her candidacy is ultimately successful under the Challenge Statute. Ga. Code Ann. § 21-2-5(e).

**B. Rep. Greene's injury is traceable to the Secretary of State's enforcement of the Challenge Statute.**

Rep. Greene's potential disqualification from running for office on the basis of a successful Challenge Statute is directly traceable to the Secretary of State. Under the Challenge Statute, the Secretary of State has the authority to determine, after a hearing, whether the challenged Candidate is disqualified from running for that office. O.C.G.A.§ 21-2-5(c). The decision of the Secretary of State is adjudicatory and is appealable to the Georgia Court of Appeals. *Id.* In this way, Rep. Greene's constitutional injuries, as detailed herein, are directly traceable to government actors, via enforcement by the Secretary of State and subsequent appellate decisions by the Georgia State Court system.

**C. Rep. Greene's injury is redressable by the court enjoining the statute as unconstitutional.**

By granting Rep. Greene's motion for injunctive relief, the Secretary of State will be prevented from enforcing the Challenge Statute against Rep. Greene and

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**                 12

disqualifying her under Section Three of the Fourteenth Amendment from being a candidate for Congress in Georgia. Such an injunction will redress the violations of Rep. Greene's constitutional rights under the First and Fourteenth Amendments in their entirety.

## II. The Younger abstention doctrine does not apply.

Federal courts must normally "fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). However, "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Id.* at 237-38. This principle of abstention is known as the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971).

When state judicial proceedings have not commenced, *Younger* does not bar a federal court from action. *See* Likewise, when the state proceedings do not afford an adequate opportunity to raise the constitutional claims at issue, *Younger* does not apply. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Moore v. Sims*, 442 U.S. 415, 430 (1979). Even though state proceedings are ongoing, the exception to *Younger* abstention found in *Middlesex*

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**                13

and *Moore* applies because Georgia state law "clearly bars the interposition of the constitutional claims." The judicial power of Georgia is fully vested in the judicial branch of the state government. Ga. Const. art. VI, § 1, ¶ I. Neither the Secretary of State nor the ALJ has the power under the Challenge Statute to determine the constitutional and federal law questions at issue here.

Without an opportunity to adjudicate the constitutional and federal law claims now, Rep. Greene will be subject to a lengthy, involved, and burdensome administrative proceeding before any court could consider those claims. Subjecting Rep. Greene to this administrative process mere weeks before absentee ballots are scheduled to be mailed is manifestly unjust when this Court can hear and decide the questions of law now.

### III. Greene is entitled to a preliminary injunction.

Parties seeking a preliminary injunction must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest. *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). Rep. Greene is entitled to a preliminary injunction because she can demonstrate all four elements required. she is likely to succeed on the merits of her constitutional

claims; the violation of her constitutional rights leads inexorably to irreparable harm and the balance of hardships favors Rep. Greene. Likewise, enjoining the Secretary of State from enforcing an unconstitutional statute serves the public interest.

**A. Greene is likely to succeed on the merits.**

**1. The statute is unconstitutional because its "reasonable suspicion" standard is insufficient justification under the First Amendment to trigger a government investigation.**

Running for political office is quintessential First Amendment activity and afforded great protection. *See Clements v. Fashing*, 457 U.S. 957, 985 (1982), (Brennan J., dissenting) (finding "[pursuing political office] is clearly protected by the First Amendment and restrictions on it must be justified by the State's interest in ensuring the continued proper performance of current public duties");

The Challenge statute is effectively a ballot access requirement. "[C]andidate eligibility requirements implicate basic constitutional rights under the First and Fourteenth Amendments." *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1351 (N.D. Ga. 2016), *aff'd*, 674 F. App'x 974 (11th Cir. 2017) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983)).

The Challenge Statute is a "candidate eligibility requirement" because it is, by

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**          15

design and effect, a barrier to the ballot that must be overcome by the candidate. It allows any elector to file a written complaint "giving the reasons why the elector believes the candidate is not qualified to seek or hold the public office [sought]," O.C.G.A. § 21-2-5(b), which triggers an administrative proceeding under an ALJ to conduct what amounts to a trial, O.C.G.A. §§ 50-13-13(a)(1)-(7), at which the burden is on the candidate to establish eligibility for office. *See Haynes v. Wells*, 273 Ga. 106, 108–09 (2000).

The "character and magnitude" of the injury imposed on First Amendment rights, *Cowen v. Georgia Sec'y of State*, 960 F.3d 1339, 1342 (11th Cir. 2020), by the Challenge Statute is significant because it *requires* the Secretary of State to refer a complaint for an administrative hearing *see, e.g.*, *Farrar v. Obama*, No.1215136-60-Malihi at *2 (Ga. Off. State Admin. Hearings (Feb. 3, 2012)). The complaint *must* be referred for hearing—without any consideration or requirement of any standard of proof whatsoever. The Challenge Statute, by operation of law, erects an *ad hoc* "candidate eligibility requirement" that the candidate must clear in order to be "eligible" for the ballot to election to *federal* office.

First, a standard-less statute such as this cannot be sufficient to justify its infringement on First Amendment rights. A Challenged Candidate is barred from

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**          16

the ballot unless and until she succeeds at a hearing in which she must defend herself in formal process—indeed, must affirmatively overcome challenger's claims—without the critical procedural safeguard of this legal gauntlet being constrained by probable cause or any other standard.

Government action against nude dancing requires probable cause which obviates the dangers to the free speech involved in such an activity. *Alexis, Inc. v. Pinellas Cty., Fla.*, 194 F. Supp. 2d 1336, 1347 (M.D. Fla. 2002) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975)). Surely then, a standard-less Challenge Statute, which constrains access to the ballot, is presumptively unconstitutional without probable cause as a procedural safeguard.

Second, it is difficult to imagine a valid government interest that would justify the First Amendment burden imposed by the Challenge Statute. The "character and magnitude" of the injury imposed on First Amendment rights by the Challenge Statute is severe, while no cognizable state interest is furthered. *See Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998). The procedurally standard-less Challenge Statute is inherently insufficient to justify its infringement on First Amendment rights and the substantial injury it inflicts is not justified by any cognizable interest of the State.

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**                17

2.  **The burden shifting provision of the Challenge Statute is unconstitutional under the Due Process Clause of the Fourteenth Amendment because it requires Greene to prove a negative.**

When a Candidate is subject to a Challenge, the ALJ will schedule a Challenge Hearing. In this Challenge Hearing, the "entire burden" is placed upon the Candidate "to affirmatively establish his eligibility for office." *Haynes v. Wells*, 273 Ga. 106, 108-09 (2000). In the case of a Challenge based upon residency or age, the proof the Candidate must provide is relatively straightforward. Documents showing a change of address or date of birth could easily be provided by the Candidate. The same is not true for a Challenge filed based on the "disqualification clause" of the Fourteenth Amendment. Under the Challenge provision, the Candidate is required to prove by a preponderance of evidence showing she didn't do something (e.g., prove that she didn't engage in "insurrection"). Such burden shifting is unconstitutional under Due Process Clause of the Fourteenth Amendment.

When processes implicate free speech, "the operation and effect of the method by which speech is sought to be restrained must be subjected to close analysis and critical judgment in the light of the particular circumstances to which it is applied." *Speiser v. Randall*, 357 U.S. 513, 520 (1958) (internal citations omitted).

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                        18

Thus, the United States Supreme Court held that the more important the rights at stake—like those implicating the First Amendment---the more important must be the procedural safeguards surrounding those rights. *Id.* at 520-21. When, throughout the judicial and administrative proceedings, the burden lies on the individual to prove she "falls outside" of the statutory framework at issue, such burden shifting violates the Due Process Clause of the Fourteenth Amendment. *Id.* at 522, 525-26. When the statutory framework violates due process, the person subject to such a statute is " not obliged to take the first step in such a procedure." *Id.* at 529.

Since the appellate courts apply a deferential standard to the facts to a Challenge Appeal, O.C.G.A. § 21-2-5, it would further violate the Candidate's due process rights by deferring to factual conclusions arrived at by a process that itself violates those same rights. The Challenge Statute's burden shifting provision violates the Due Process Clause of the Fourteenth Amendment by requiring Rep. Greene prove a negative (i.e., that she did not engage in "insurrection").

3. **The statute is unconstitutional under Article 1, § 5 of the U.S. Constitution because Congress is the exclusive judge of the qualifications of its Members.**

Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall

constitute a Quorum to do Business; but a smaller Number may
adjourn from day to day, and may be authorized to compel the
Attendance of absent Members, in such Manner, and under such
Penalties as each House may provide.

U.S. Const. art. I, § 5, cl. 1.

Voters have unfettered discretion in voting to independently evaluate whether
federal candidates meet the constitutional qualifications for office. Derek T.
Muller, *Scrutinizing Federal Electoral Qualifications*, 90 Ind. L.J. 559, 592 (2015)
("**Muller**") (citations omitted). But Congress has an exclusive role in judging the
qualifications of its own members to determine if they are eligible to take a seat in
Congress. *Id*. at 611 (collecting cases). This exclusive role is consistent with the
Supreme Court's logic in *Roudebush v. Hartke*. 405 U.S. 15 (1972). The
*Roudebush* Court held that a recount doesn't usurp the Senate's function because
it doesn't "frustrate the Senate's ability to make an independent final judgment."
*Id*. at 25-26 (cleaned up).

Here, the Challenge Statute permits the State of Georgia to make its own
independent evaluation of whether a Candidate is constitutionally qualified to be a
Member of the U.S. House of Representatives. O.C.G.A. § 21-2-5.

A fundamental principle of our representative democracy is, in Hamilton's
words, 'that the people should choose whom they please to govern them.' 2

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                20

Elliot's Debates 257. Both the intention of the Framers, to the extent it can be determined, and an examination of the basic principles of our democratic system persuade us that the Constitution does not vest in the Congress a discretionary power to deny membership by a majority vote. *Powell v. McCormack,* 395 U.S. 486, 548.

Surely if the elected members of Congress can only prevent a member from being seated with two thirds vote, a state cannot adopt a law that allows a candidate for federal office to be stricken from the ballot administratively. Indeed, it would have made little sense to prohibit former members of Congress who thereafter joined the Confederacy from again serving in Congress, but leave the decision of who was disqualified to the same states that rebelled only a few years prior. Because the Challenge Statute directly usurps Congress' constitutional responsibilities, it violates Article 1, § 5 of the U.S. Constitution.

**4.    Application of Section Three of the Fourteenth Amendment to Greene is prohibited by federal law.**

Section Three of the Fourteenth Amendment reads,

No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, ***who, having previously taken an oath, as a member of Congress***, or as an officer of the United States, or as a member of any State legislature, or as an

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**               21

executive or judicial officer of any State, to support the Constitution
of the United States, ***shall have engaged*** in insurrection or rebellion
against the same, or given aid or comfort to the enemies thereof. But
Congress may by a vote of two-thirds of each House, remove such
disability.

U.S. Const. amend. XIV, § 3 (emphasis added). Of course, Congress does not have

the power to "repeal" a constitutional Amendment, but the plain language of the

Amendment itself gave Congress the power to remove the disability in Section

Three.

Congress did just that when it passed The Amnesty Act of 1872 by the

requisite two-thirds of both Houses of Congress. It reads, "all political disabilities

imposed by the third section of the fourteenth amendment to the Constitution of

the United States are hereby removed from all persons whomsoever, except

Senators and Representatives of the thirty-sixth and thirty-seventh Congresses,

officers in the judicial, military, and naval service of the United States, heads of

departments, and foreign ministers of the United States." United States Statutes at

Large, 42 Cong. Ch. 194, May 22, 1872, 17 Stat. 142 ("**1872 Act**"). By the plain

language of this Act, the political disability was removed from any Representative

other than those of the two enumerated Congresses. Rep. Greene is a Member of

the 117th Session of Congress, so the 1872 Act removed any disability under

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                    22

Section Three from Rep. Greene.

Section Three does not specify Congress only has the power to remove past disabilities, it specifies Congress has the power to remove "such disability." "Such disability" refers to the disability of someone who has previously taken an oath as a member of Congress who "*shall have engaged*" in insurrection from taking office. "Shall have" followed by a past participle forms the future perfect tense and shows an action will occur before another action in the future.[2] The grammatical reading of Section Three means that Congress had the power to remove "such disability: for both Members who had incurred the disability and those who had not incurred such disability, but could if they engaged in the applicable prohibitions in the future. A district court in the Fourth Circuit recently held that The Amnesty Act of 1872 does preclude a Challenge based in Section Three of the Fourteenth Amendment. *See Cawthorn v. Circosta, et al.*, Case No. 5:22-cv-00050-M, ECF No. 78, Ex. A.

Since Section Three does not apply to Rep. Greene (or any Member holding office after the 37th Congress), the application of Section Three to Rep. Greene is

---

[2] Elizabeth O'Brian, *What is future perfect tense?*, GRAMMAR REVOLUTION, (Jan. 28, 2022, 2:08 PM), https://www.english-grammar-revolution.com/future-perfect-tense.html

**Pl.'s Mem. in Supp. of**
**TRO and Prelim. Inj.**                    23

prohibited by federal law.

**B.      Greene will suffer irreparable harm.**

Deprivation of a constitutional right, even for a short period of time,

constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Challenge Statue violates Rep. Greene's First Amendment rights by

allowing a Challenge to be based upon a voter's "belief." The Challenge Statute's

requirement that Rep. Greene prove, by a preponderance of the evidence, that she

is *not* disqualified, violates her due process rights under the Fourteenth

Amendment. The Challenge Statute is unconstitutional under Article 1, § 5 of the

U.S. Constitution because Congress is the exclusive judge of the qualifications of

its Members. Finally, application of Section Three of the Fourteenth Amendment

to Rep. Greene is prohibited by federal law. Because the Challenge Statute

violates such fundamental constitutional and legal rights, and Rep. Greene is

subject to the Challenge Statute, she suffers irreparable harm

**C.      The balance of hardships favors Greene.**

If this Court finds Rep. Greene is likely to succeed on the merits, it will

necessarily have found that the Challenge Statute is unconstitutional on the basis

of all, or some of, Rep. Greene's claims. Depriving Rep. Greene of her

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**               24

constitutional right to run for political office, or forcing her to defend her right to do so based upon a constitutionally flawed process, would be a hardship, especially given the timeline involved. If enjoined, the Secretary of State will suffer no lasting hardship from the inability to enforce an unconstitutional process. Enjoining the Secretary of State from enforcing the Challenge Statute will not prevent its ability to administer either the primary or general elections this year.

**D.    Public interest favors injunction.**

Upholding constitutional rights serves the public interest. *See Elrod*, 427 U.S. at 373 (1976). In contrast, the public interest is harmed when unconstitutional statutes are enforced and used against those seeking to lawfully exercise their constitutional rights. The public interest is served in choosing the People's representatives by democratic processes, not by state bureaucrats, which Challengers propose here. The undemocratic scheme contained in the Georgia Challenge provisions supplants voters for state bureaucrats who will determine who can represent the People. This is fundamentally anti-democratic and contrary to the public interest.

**Conclusion**

For the foregoing reasons, Rep. Greene respectfully requests this Court grant her motions for a temporary restraining order and a preliminary injunction.

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**                25

Dated: April 1, 2022

Respectfully Submitted,

/s/ Kurt R. Hilbert
Kurt Hilbert, GA Bar No. 352877
THE HILBERT LAW FIRM, LLC
205 Norcross Street
Roswell, GA 30075
T: 770-551-9310
F: 770-551-9311
khilbert@hilbertlaw.com
*Local Counsel for Plaintiff*

/s/ James Bopp, Jr.
James Bopp, Jr., Ind. Bar No. 2838-84*
Melena S. Siebert, Ind. Bar No. 35061-15*
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
msiebert@bopplaw.com
* Motions for *Pro hac vice* admission forthcoming
*Attorneys for Plaintiff*

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**          26

# Certificate of Compliance

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as required by the Court in Local Rule 5.1(B).

Respectfully submitted on April 1, 2022.


/s/ Kurt R. Hilbert
Attorney for Plaintiff

# Certificate of Service

I hereby certify that on April 1, 2022, a copy of the foregoing document was served upon the following persons by email, and Defendants were served according the Federal Rules of Civil Procedure:

Hon. Brad Raffensperger
Secretary of State
214 State Capitol
Atlanta, Georgia 30334

General Counsel for Georgia Secretary of State:

Ryan Germany, Esq.
rgermany@sos.ga.gov
soscontact@sos.ga.gov

Attorney General Chris Carr
Georgia Office of the Attorney General
40 Capitol Square SW
Atlanta, GA 30334, United States
ccarr@law.ga.gov

ALJ judicial assistant:

Mr. Devin Hamilton
Hon. Charles R. Beaudrot, Jr.
225 Peachtree Street, NE
Suite 400, South Tower
Atlanta, Georgia 30303
devinh@osah.ga.gov
cbeaudrot@osah.ga.gov

OSAH-Office of State Administrative Hearings
225 Peachtree Street, NE
Suite 400, South Tower
Atlanta, Georgia 30303

Known Counsel in ALJ proceeding:

Ronald A. Fein
John C. Bonifaz
Ben Clements
Courtney Hostetler
Benjamin Horton
1320 Centre St #405
Newton, MA 02459
617-244-0234
rfein@freespeechforpeople.org

Jonathan S. Abady
Andrew G. Celli Jr
Sam Shapiro
Andrew K. Jondahl
699 Fifth Avee 10th Fl
New York, NY 10020
jabady@ecbawn.ccom
acelli@ecbawm.com

Bryan L. Sells
PO Box 5493
Atlanta, GA 31107
404-480-4212
bryan@bryansellslaw.com

**Pl.'s Mem. in Supp. of
TRO and Prelim. Inj.**            29

Steven Ellis
2 MLK Jr Drive SE
Ste 802, West Tower
Atlanta, Ga 30334

/s/ Kurt R. Hilbert
Attorney for Plaintiff