UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARJORIE TAYLOR GREENE, an individual,<br><br>                Plaintiff,<br><br>   -against-<br><br>MR. BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, MR. CHARLES R. BEAUDROT, in his official capacity as an Administrative Law Judge for the Office of State Administrative Hearings for the State of Georgia, JOHN DOE 1, in his official capacity, and GOVERNMENT ENTITY 1,<br><br>                Defendants. | No. 1:22 Civ. 1294-AT |

**DAVID ROWAN, DONALD GUYATT, ROBERT RASBURY, RUTH DEMETER, AND DANIEL COOPER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS**

## PRELIMINARY STATEMENT

Proposed Intervenors David Rowan, Donald Guyatt, Robert Rasbury, Ruth Demeter, and Daniel Cooper ("Intervenors")—who are all residents of Georgia's 14th Congressional District—brought a state proceeding under O.C.G.A. § 21-2-5 (Georgia's candidacy challenge statute) challenging Marjorie Taylor Greene's eligibility to run for Congressional office in their District. Intervenors allege that Greene is ineligible to run for Congressional office under Section 3 of the 14th Amendment because she "engaged in insurrection or rebellion" against the United States by helping to facilitate the insurrection of January 6, 2021.

Rather than defend her candidacy on the merits, Greene brings this federal action to try to enjoin the Intervenors' state proceeding and bar Intervenors from exercising their statutory right to challenge Greene's qualifications to run for office. None of her claims—that Georgia's system for challenging candidates is unconstitutional or that Section 3 of the 14th Amendment does not apply to her—presents any basis for this Court to interfere with Intervenors' lawfully initiated state challenge.

Intervenors seek leave to intervene to oppose Greene's collateral attack on their challenge to Greene's candidacy. Intervenors meet the standards for intervention—both as of right and, alternatively, as a matter of discretion—under Rule 24 of the Federal Rules of Civil Procedure. This action directly threatens

Intervenors' interest in challenging the candidacy of someone running for office in their District. Greene attacks not only Georgia's statutory system for adjudicating challenges like Intervenors', but also the legal basis on which Intervenors' challenge rests. Defendants—state officials who have no stake in the outcome of Intervenors' challenge—will not adequately protect Intervenors' interests in defending the merits of their challenge.

Accordingly, the Court should allow Intervenors to intervene.

## STATEMENT OF FACTS

As set forth in Greene's verified complaint, ECF No. 3 ("Compl."), and the exhibits thereto, which include Intervenors' Notice of Candidacy Challenge, ECF No. 3-1, Georgia law permits any person "who is eligible to vote for a Candidate" to "challenge the qualifications of the candidate by filing a written complaint with the Secretary of State." Compl. ¶ 14 (citing Ga. Code Ann. § 21-2-5(b)). Intervenors are five registered Georgia voters who reside in Georgia's 14th Congressional District, *id.* Ex. A ¶ 1, for which Greene filed her notice of candidacy on March 7, 2022, *id.* ¶ 29. On March 24, 2022, Intervenors filed a Notice of Candidacy Challenge against Greene (the "Challenge"). *Id.* ¶ 30; *see also id.* Ex. A. The Republican primary election for Congress in Georgia's 14th District is scheduled for May 24, 2022.

As Georgia law requires, Intervenors' Challenge was initially directed to Defendant Georgia Secretary of State Brad Raffensperger. It was then referred to Administrative Law Judge ("ALJ") Charles R. Beaudrot, who has scheduled a hearing to occur on April 13, 2022. A pre-hearing conference has been set for April 5, 2022, and pre-hearing submissions are due to be filed on April 11, 2022. Intervenors have also moved for leave to take Greene's deposition; Greene's response to that motion is due on April 4, 2022.

Greene has now asked this Court to stop that state proceeding in its tracks and deprive Intervenors of their statutory right to challenge Greene's candidacy.

On April 1, 2022, within hours of this case being filed, Intervenors' counsel notified the Court by telephone that they intended to move to intervene. The same day, an Assistant Attorney General notified Intervenors' counsel that Defendants would not oppose Intervenors' motion to intervene because Defendants' counsel believed Intervenors would be entitled to intervene as a matter of right.

## ARGUMENT

Intervenors should be granted leave to intervene as of right and with the Court's permission. Intervenors are entitled to intervention as of right because: (1) their motion is timely; (2) they have a strong interest in protecting their right to litigate the Challenge; (3) Greene seeks to impair that interest by foreclosing Intervenors' Challenge; and (4) the current Defendants—public officials with

3

different roles to play in a candidacy challenge—will not adequately represent Intervenors' interest.

Alternatively, Intervenors should be granted permissive intervention because the relief Greene seeks would, if granted, entirely negate Intervenors' statutory rights to challenge Greene's candidacy. Intervenors' interests in preventing Greene from prevailing present questions of law and fact in common with those presented in this action, and intervention will not unduly delay or prejudice the rights of the existing parties

## I.   THE COURT SHOULD GRANT THE MOTION TO INTERVENE AS OF RIGHT

Intervenors are entitled to intervene in this action as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2). Parties seeking to intervene as of right must show:

> (1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (cleaned up). Where, as here, all the "prerequisites to intervention" are established, "the district court has no discretion to deny" a

motion to intervene. *United States v. State of Ga.*, 19 F.3d 1388, 1393 (11th Cir. 1994).

### A.    The Motion to Intervene is Timely

Intervenors' motion—filed one business day after Greene initiated this action—is timely.

Motions to intervene are considered timely even when filed months after the complaint. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (motion deemed timely when filed seven months after original complaint, three months after motion to dismiss, and before discovery began); *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259–60 (11th Cir. 2002) (motion deemed timely when filed six months after intervenor became aware of its interest and after discovery was largely complete); *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, No. 1:19 Civ. 5292, 2020 WL 5028322, at *2 (N.D. Ga. Mar. 31, 2020) (motion deemed timely where filed before defendants answered and prior to commencement of discovery); *Patel v. Patel*, No. 1:09 Civ. 3684, 2010 WL 11549879, at *2 (N.D. Ga. Dec. 29, 2010) (motion deemed timely ten months after lawsuit was filed). Here, Intervenors filed their motion within 72 hours of Greene's complaint.

The speed with which Intervenors filed this motion ensures there is no prejudice to Greene. Prejudice "is the essence of the timeliness inquiry."[1] *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1479 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n,* 495 F.3d 1324 (11th Cir. 2007). The "only prejudice that matters is that occasioned by the intervenor's delay in seeking intervention . . . ." *Canal Indem. Co. v. Dueitt*, No. CIV.A. 10-0526-WS-B, 2011 WL 335166, at *2 (S.D. Ala. Jan. 31, 2011) (citing *Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir. 1977)). Here, Intervenors filed their motion without delay and before anything has happened in this case. Allowing Intervenors to intervene will not delay the case or otherwise affect any party's right to be heard. Intervenors' motion is therefore timely.

## B.    Intervenors Have a Substantial Interest in this Case

Intervenors have a strong interest in this case because it seeks to foreclose their statutory right to challenge Greene's candidacy.

Intervenors can satisfy the substantial interest element by demonstrating that they "are a real party in interest in the transaction which is the subject of the

---

[1] When assessing timeliness, district courts typically consider four factors: "(1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 272 F. App'x 817, 819 (11th Cir. 2008). Because Intervenors filed their motion one business day after the instant action was filed, detailed analysis of these factors is not necessary.

proceeding," which, in other words, requires a showing that they have "a direct, substantial, legally protectable interest in the proceedings." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). The inquiry on this element "is a flexible one, which focuses on the particular facts and circumstances surrounding each motion for intervention." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213-14 (11th Cir. 1989) (cleaned up). The interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 594 (11th Cir. 1991) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

Here, Georgia law gives Intervenors a "legally protectable" property interest in litigating their Challenge to Greene's candidacy. Property interests are "created and their dimensions are defined by" independent sources of law such as state statutes and regulations. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Paul v. Davis*, 424 U.S. 693, 711 (1976) (due process is required where "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished"). Property interests are "not limited by a few rigid technical forms," *Perry v. Sindermann,* 408 U.S. 593, 601 (1972); rather, the "hallmark of property is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Barnes v.*

*Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) (holding that student had property interest in continued education grounded in state university's policy manual and student code of conduct).

Georgia's candidacy challenge statute ("Challenge Statute") grants Intervenors the right to challenge and litigate a potential Congressional candidate's qualifications for office. *See* O.C.G.A. § 21-2-5. The Challenge Statute gives "any elector who is eligible to vote for a candidate" the right to "challenge the qualifications of the candidate by filing a written complaint with the Secretary of State . . . ." O.C.G.A. § 21-2-5(b). Once an elector files such a challenge:

> [T]he Secretary of State shall notify the candidate in writing that his or her qualifications are being challenged and the reasons therefor and shall advise the candidate that he or she is requesting a hearing on the matter before an administrative law judge of the Office of State Administrative Hearings pursuant to Article 2 of Chapter 13 of Title 50 and shall inform the candidate of the date, time, and place of the hearing when such information becomes available.

*Id.* (emphasis added). The wording of the statute is mandatory, not permissive. Petitioners have a *right* to challenge Greene's candidacy, the Secretary of State must refer the challenge to an ALJ, *see Farrar v. Obama*, No. 1215136-60-Malihi (Ga. Off. State Admin. Hearings Feb. 3, 2012), and that ALJ must hold a hearing within thirty days of receipt of the challenge, *see* O.C.G.A. § 50-13-41(a)(1).

Before the hearing, the challenger and candidate, as the two adverse parties before the neutral adjudicative panel, are afforded pre-hearing discovery, including

the right to compel the production of documents, to take each other's deposition, and to request subpoenas for witnesses or documents from third parties. *Id.* § 50-13-13(a)(6). The hearing itself mirrors a trial court hearing: both parties have a right to "be represented by legal counsel and to respond and present evidence on all issues involved." *Id.* §§ 50-13-13(a)(3). The ALJ has similar powers to a trial court judge, including the power to find parties in contempt for not adhering to court orders. *Id.* §§ 50-13-41(a)(2)–(4), (b).

Within thirty days after the hearing, the ALJ "*shall* issue a decision to all parties in the case . . . ." *Id.* § 50-13-41(c) (emphasis added). The Secretary of State then must make a final decision "determin[ing] if the candidate is qualified to seek and hold the public office for which such candidate is offering." *Id.* § 21-2-5(c). Either party—the elector or the challenged candidate—has "the right to appeal the decision of the Secretary of State" to the Superior Court of Fulton County, *id.* § 21-2-5(e), and that court's decision may be appealed by either party directly to the Georgia Supreme Court. *Id.* § 21-2-5(e); *Burgess v. Liberty Cty. Bd. of Elections*, 291 Ga. 802, 803 (2012) (candidate challenges are "election contests"); Ga. Const. art. VI, § 6, ¶ II (the Georgia Supreme Court has exclusive jurisdiction over "election contest[s]").

These Georgia statutes confer on Intervenors various "legally protectable interests," including, *inter alia*, the right to challenge Greene's candidacy, the right

to have that challenge heard before an ALJ, the right to take discovery from Greene, the right to present evidence at the hearing, the right to a decision from an ALJ, and the right to appeal that decision to the Superior Court of Fulton County and the Georgia Supreme Court. The injunction Greene seeks here could fatally undermine all those rights, or at least delay final resolution until after the election for which Intervenors challenge Greene's qualification . There can be "no doubt that [Intervenors] satisfy the interest requirement of Rule 24(a)(2)," because they are parties to the underlying proceeding that Greene seeks to enjoin, which is "the axis on which [this] lawsuit turns." *Chiles*, 865 F.2d at 1214.

## C. Disposition of This Action Could Impede and Impair Intervenors' Interests

Greene's effort to foreclose Petitioners from litigating their Challenge could directly impair Intervenors' substantial interests.

To establish that the resolution of the instant action will "impede or impair" Intervenors' interests, they need only show that they will be "practically disadvantaged by [their] exclusion from the proceedings." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017) (quoting *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014)); *see also Chiles*, 865 F.2d at 1214 (granting motion to intervene where "the lawsuit will, as a practical matter, impair [proposed intervenors'] ability to protect their interests"). Similarly, establishing that this action will "adversely impact" the Challenge

proceeding is sufficient to create a right to intervene. *See Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1258 (11th Cir. 2002) (finding a right to intervene where a "final ruling in this case [would] adversely impact" another proceeding).

Here, Greene seeks to preclude Intervenors from exercising their rights under Georgia law to challenge Greene's candidacy in time to disqualify her from appearing on the ballot for the upcoming May 24 primary. *See supra* Section I.B. The threat is particularly grave because the requested relief includes both facial and as-applied challenges to the Georgia Challenge Statute, including a claim that Section 3 of the 14th Amendment cannot be used to challenge Greene's candidacy. *See* Compl. Counts I & III (facial constitutional challenges, ¶¶ 54-59, 66-71) & Count II (as-applied 14th Amendment due process challenge to Intervenors' reliance on Section 3 in the Challenge proceeding, ¶¶ 60-65) & Count IV (as-applied statutory challenge to the application of Section 3 of the 14th Amendment to Greene, ¶¶ 72-77). Through her facial challenges, Greene is asking this Court to strike down the entirety of Georgia's candidacy challenge regime, necessarily ending Intervenors' Challenge proceeding. Through her as-applied challenges, Greene requests that the Court enjoin Intervenors' Challenge proceeding specifically. And through her 14th Amendment argument, Greene asks the Court to rule that the basis for Intervenors' Challenge proceeding is legally deficient.

Intervenors' "ability to litigate [Greene's qualifications for office] in a separate lawsuit" would likely be an "exercise in futility if the instant lawsuit was decided in favor of [Greene]." *Chiles*, 865 F.2d at 1214. *Cf. Worlds*, 929 F.2d at 594-95 (finding no impairment only because there was the opportunity to litigate interest in a separate suit); *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292–93 (11th Cir. 2020) (no impairment because proposed intervenors could "separately litigate" their interests). Greene seeks not only to "practically disadvantage" and "adversely impact" Intervenors' Challenge proceeding, she seeks to stop it entirely. This substantial threat to Intervenors' interests establishes their right to intervene.

### D.    Defendants Will Not Adequately Protect Intervenors' Interests

The burden for a proposed intervenor to show inadequacy of representation is "minimal"; it only requires that "the representation of his interest '*may be*' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("The proposed intervenors' burden to show that their interests *may be* inadequately represented is minimal." (emphasis in original)); Intervenors should therefore "be allowed to intervene unless it is clear that [Defendants Raffensperger and Beaudrot] will provide adequate representation." *Chiles*, 865 F.2d 1197 at 1214 (quoting 7C C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1909, at 319 (2d ed. 1986)); *Salvors*, 861 F.3d

at 1295 (burden to establish inadequate representation is "treated as minimal"). While some courts presume adequate representation where a proposed intervenor shares the same "ultimate objective" as an existing party, "resort to the presumption [of adequacy] is inappropriate" where, as here, the defendant is the government and there is "some evidence placed before the court tending to rebut it." *Meek*, 985 F.2d at 1477.

Here, Secretary of State Raffensperger and ALJ Beaudrot do *not* share Intervenors' ultimate objective. Intervenors' goal is to ensure that Greene's federal claims are rejected in their entirety and that no order is issued that will interfere whatsoever with their ability to fully exercise their state statutory rights to challenge Greene's candidacy. While Defendants presumably have an interest in defending the constitutionality of the Georgia Challenge Statute, they also represent broader public and institutional interests, not shared by Intervenors, that will factor into how they respond to this action, and they have no particular interest in ensuring Intervenors are able to pursue their particular challenge.

In any event, Defendants will not adequately represent Intervenors' interests, regardless of whether the court requires a minimal or strong showing of inadequacy. Defendants have no interest in defending the basis of Intervenors' Challenge and have only minimal incentive to rebut Greene's facial and as-applied constitutional claims against the Challenge Statute.

Defendants have no incentive to rebut Greene's (incorrect) argument that the "application of Section Three [of the 14th Amendment] to Rep. Greene is prohibited by federal law." ECF No. 5-1 at 23-24 (Greene's P.I. Br.); *see also* Compl. Count IV. This argument does not attack Georgia's Challenge Statute and thus Defendants have no interest in rebutting it. Intervenors must be allowed to intervene to defend against Greene's attacks on the merits of their Challenge.

Defendants also have minimal interest in defending Greene's as-applied constitutional claim against Intervenors' Challenge. *See* Compl. Count II. Unlike Greene's facial challenges to Georgia's Challenge Statute, the as-applied constitutional challenge does not seek to invalidate the Georgia Challenge Statute entirely; rather, it seeks to invalidate Georgia's Challenge Statute only for challenges, like Intervenors', that rely on Section 3 of the 14th Amendment. Defendants' interest in defending the Georgia Challenge Statute as it applies to Intervenors' particular challenge is not nearly as high as Intervenors' interest in defending their Challenge.

Such a divergence of interests between government defendants and intervenors creates a right to intervene. In *Clark v. Putnam County*, for example, the Eleventh Circuit held that a county Board of Commissions could not adequately represent the interests of six voters who sought to intervene in an action challenging a court-ordered voting plan, and reversed a district court order denying

14

the voters' motion to intervene. 168 F.3d 458 (11th Cir. 1999). The court based its conclusion on the fact that the county commissioners "represent the interests of all Putnam County citizens," and the fact that "the commissioners are undisputedly elected officials, and like all elected officials they have an interest in remaining politically popular and effective leaders." *Id.* at 461-62 (cleaned up). Likewise, Defendant Secretary of State Raffensperger (who, like the commissioners in *Putnam County*, will not oppose Intervenors' motion) is an elected official. He must act in the best interests of *all* Georgia electors and advocate for their general interests in protecting the Challenge Statute, even if (in his opinion) that means concession on Greene's as-applied challenges. *See Meek*, 985 F.2d at 1478 (11th Cir. 1993) (no adequate representation by government party with same objectives as intervenors to "uphold" a state election system, where government defendant "had to consider the overall fairness of the election system to be employed in the future, the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue"). Put another way, Intervenors' interest is in ensuring that their particular Challenge can proceed, whereas Defendants' interest is in preventing a ruling that impedes the Challenge Statute more generally.

A similar divergence of interests was at play in the Supreme Court's *Trbovich* case. There, it was enough to show that the Secretary of the NLRB had dual loyalties to both the "individual union members" and the "public interest," to

allow the individual union member *represented by the NLRB* to intervene as a separate party. *Id.* at 538–39.

Finally, Intervenors' and Defendants' interests diverge with respect to *time*. The Georgia primary is on May 24, 2022. Because Intervenors' interest is in litigating the Challenge, with the ultimate goal of a ruling (in the state proceeding) that Greene is in fact disqualified from federal office and therefore (by virtue of the Challenge Statute) ineligible to appear on the ballot, the *pace* of this litigation is critical to Intervenors in a way that it may not be for Defendants. Intervenors seek a resolution of Greene's federal lawsuit as rapidly as possible, so that they may litigate their Challenge *before* the primary; Defendants have no such time pressure.

This divergence of interest played out recently in North Carolina, when Representative Madison Cawthorn sued members of the North Carolina State Board of Elections ("NCSBE"), seeking a federal injunction against a similar candidacy qualifications challenge brought by North Carolina voters under Section 3 of the 14th Amendment. *See Cawthorn v. Circosta*, No. 5:22 Civ. 50, 2022 WL 738073, at *10 (E.D.N.C. Mar. 10, 2022). The district court denied the voters' motion to intervene based on its determination that the NCSBE would adequately represent the voters' interest. The court then enjoined the voters' candidacy qualifications challenge against Cawthorn, but it did not reach any of the facial or as-applied constitutional challenges Cawthorn brought against the North Carolina

challenge statute. *See generally Cawthorn*, 2022 WL 738073. Because the district court's ruling did not address the constitutionality of the challenge statute, and instead left it intact, *id.*, the defendant NCSBE had little incentive to file an expedited appeal. The voter-challengers filed an emergency application for stay of the injunction, but the NCBSE has not appealed the ruling. To the contrary, it informed the Fourth Circuit that, if it *does* file an appeal within the 30-day deadline, it will *not* seek an expedited schedule. NCSBE Amicus Br., *Cawthorn v. Amalfi*, No. 22-1251 (4th Cir. filed Mar. 14, 2022), ECF No. 19. Like Defendants here, North Carolina's neutral adjudicative body does not share the voter-challengers' interest in a speedy resolution in time to allow the challenge to be adjudicated before the primary election.

Here, the Intervenors are interested in pursuing their Challenge against Greene. They seek to defend their procedural right to pursue that Challenge—by rebutting the facial and as-applied challenges to the Georgia Challenge Statute—and the substantive law on which their Challenge rests—Section 3 of the 14th Amendment. Intervenors' interests may overlap with Defendants' interests, but they are distinct. And even if there was any question about the divergence of interests, the Court must "resolve "[a]ny doubt concerning the propriety of allowing intervention . . . in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Zone 4, Inc. v. Brown*, No.

1:19 Civ. 676, 2019 WL 7833901, at *5 (N.D. Ga. Aug. 6, 2019) (quoting *Falls Chase*, 983 F.2d at 216).

Accordingly, Intervenors should be granted leave to intervene as of right.

## II.    THE COURT SHOULD GRANT INTERVENORS PERMISSIVE INTERVENTION

Intervenors also satisfy the requirements for permissive intervention. Courts may grant permissive intervention if a proposed intervenor establishes that the application to intervene was timely and alleges "a claim or defense that shares . . . a common question of law or fact" with the main action. Fed. R. Civ. P. 24(b).

As discussed above, Intervenors' nearly instantaneous Motion to Intervene is timely. *See supra* Section I.A.

Intervenors' defenses, while not identical, have significant overlap with the existing Defendants' defenses. The claim or defense clause of Rule 24(b) "is generally given a liberal construction." *Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014). If that requirement is satisfied, "the Court must exercise its discretion in determining whether intervention should be allowed," while considering "'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (quoting Fed. R. Civ. P. 24(b)(3)); *see also Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) ("Rule 24(b) allows courts to permit timely intervention by anyone with 'a claim or defense that shares with the main action a

common question of law or fact,' but courts must exercise discretion and consider whether the intervention will 'unduly delay or prejudice the adjudication of the original parties' rights.'" (quoting Fed. R. Civ. P. 24(b))).

Many of Intervenor's defenses "clearly overlap" with Defendants' defenses, and "they turn on the same issue"—the validity of Georgia's Challenge Statute. *Lisle Co. v. CH2M Hill Constructors, Inc.*, No. 4:15 Civ. 159, 2016 WL 6948690, at *3 (M.D. Ga. Jan. 25, 2016). Similarly, in *New Georgia Project v. Raffensperger*, plaintiffs challenged aspects of Georgia Senate Bill 202 ("SB 202"), which changed election procedures in the state of Georgia. No. 1:21 Civ. 1229, 2021 WL 2450647 (N.D. Ga. June 4, 2021). The proposed intervenors—the Republican National Committee, National Republican Senatorial Committee, Georgia Republican Party, Inc., and the National Republican Congressional Committee—sought leave to intervene as defendants because changes to the law "could affect candidates and voters of the Republican Party." *Id.* at *1. The court held that the proposed intervenors' defenses shared a common question of law or fact with the complaints because invalidating the challenged election law "would impair their ability to elect their chosen candidates." *Id.* at *2. The common question here—whether Intervenors may maintain their Challenge proceeding—is far less abstract.

Finally, because Intervenors "moved to intervene soon after the complaint[]
[was] filed . . . and the case[] [is] still at the answer stage, allowing them to join the
action[] at this point will not cause undue delay or burden." *Id.* at *2.

## CONCLUSION

The Court should grant Intervenors' motion to intervene as of right or, in the
alternative, for permissive intervention.


This 4th day of April, 2022.

Respectfully submitted,

*/s/ Bryan L. Sells*
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

Ronald Fein*
John C. Bonifaz*
Ben Clements*
Courtney Hostetler*
Benjamin Horton*
FREE SPEECH FOR PEOPLE
1320 Centre St. #405
Newton, MA 02459
(617) 244-0234
rfein@freespeechforpeople.org

Jonathan S. Abady*
Andrew G. Celli, Jr.*
Sam Shapiro*
Andrew K. Jondahl*
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000
jabady@ecbawm.com
acelli@ecbawm.com

*Attorneys for Intervenors*

* Motions for *pro hac vice* admission forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing document has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Bryan L. Sells*
Bryan L. Sells