**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARJORIE TAYLOR GREENE,

*Plaintiff,*

v.

BRAD RAFFENSPERGER, in his
official capacity as Georgia Secretary
of State, *et al.,*

*Defendants.*

CIVIL ACTION

No. 1:22-cv-01294-AT

**DEFENDANTS RAFFENSPERGER AND BEAUDROT'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER AND MOTION FOR
PRELIMINARY INJUNCTION**

## INTRODUCTION

Georgia has a well-established interest in regulating access to the ballot by candidates for federal and state office. *Cowen v. Sec'y of Ga.*, 22 F.4th 1227, 1233-34 (11th Cir. 2022). As part of the orderly administration of elections, Georgia law requires that candidates be qualified in advance of an election and provides a process by which eligible voters or the Secretary of State may challenge the legal qualifications of any candidate before any voter casts a ballot. O.C.G.A. § 21-2-5 (the "Challenge Statute"). After notice and the opportunity for a hearing, the Secretary of State is authorized to determine whether the candidate is qualified for office, which is subject to judicial review in state court. *Id.*

Plaintiff Marjorie Taylor Greene ("Greene") filed this action seeking to bar an ongoing state proceeding challenging her qualification as a candidate for U.S. Representative under the Challenge Statute. That challenge was initiated by a group of interested voters, and neither of the State Defendants are parties to the proceeding. And because State Defendants are required under Georgia law to hear and adjudicate the pending challenge proceeding, they take no position on the merits of the underlying challenge to Greene's qualifications as a candidate for U.S. Representative in this response. The parties to the challenge proceeding will have the opportunity to present their

1

evidence and legal arguments in that case—including the constitutional arguments raised in this action—and to seek judicial review of the Secretary of State's determination on appeal.

There is no legal basis for this Court to enjoin the ongoing state challenge proceeding and declare the Challenge Statute unconstitutional as Greene requests. As a threshold matter, the Court should decline to exercise jurisdiction over Greene's claims under the *Younger* abstention doctrine, which prohibits federal courts from interfering with ongoing state judicial proceedings implicating a compelling state interest, such as the state's ability to regulate candidate access to the ballot. Additionally, Greene's claims are not ripe for judicial review, because she has not suffered any deprivation of a constitutional right, and the threat of such deprivation is entirely hypothetical and speculative at this point in the challenge proceeding.

But even if it were proper for this Court to exercise jurisdiction over Greene's claims, her motion should be denied because she cannot satisfy the requirements for the extraordinary injunctive relief she seeks. There is simply no legal merit to Greene's attacks on the constitutionality of the Challenge Statute. Georgia's well-established interest in regulating ballot access is served by ensuring that candidates for federal or state office are qualified to hold the office they seek before voters cast ballots in an election. And it is not

unduly burdensome to require candidates to demonstrate that they meet the legal qualifications for office if challenged, which is the only available process under state or federal law for screening candidates prior to an election. On the other hand, allowing candidates a place on the ballot for federal office based on the "honor system" as urged by Greene would open the door to electoral fraud and the possibility that unqualified candidates such as minors, out-of-state residents, or even non-citizens could be elected to public office.

Greene faces no irreparable harm if she has to demonstrate her qualification for office in the on-going challenge proceeding. Nothing has been adjudicated at this point in the proceeding, and Greene will have the opportunity to present the same legal arguments and defenses raised in this action during the state proceeding and, if necessary, a subsequent appeal. The public interest is also served by preserving the candidate challenge process. The integrity of Georgia's elections would certainly be undermined if voters lack confidence in the qualifications of the candidates on the ballot. Georgia voters have a further interest in ensuring that their elected representatives to Congress are seated, and in avoiding the unnecessary and costly special election that would be required if an elected member is disqualified post-election. Accordingly, the Court should deny Greene's motions and allow the challenge proceeding to move forward as scheduled.

# BACKGROUND

## A.    Candidate Qualifying under Georgia Law

Georgia law requires that "every candidate for federal and state office…shall meet the constitutional and statutory requirements for holding the office being sought." O.C.G.A. § 21-2-5(a). The Challenge Statute permits an eligible voter to file a pre-election challenge to the qualifications of a candidate who has filed to run in an upcoming election for a state or federal office by filing a complaint with the Secretary of State, giving the reasons why the elector believes the candidate is not qualified to seek and hold office.[1] O.C.G.A. § 21-2-5(b). The Secretary of State notifies the candidate in writing that his or her qualification has been challenged, provides the reasons for the challenge, and advises the candidate that the challenge is being referred for a hearing by an administrative law judge ("ALJ") of the Office of State Administrative Hearings ("OSAH").  *Id.*  The ALJ reports his or her findings to the Secretary of State, who will determine if the candidate is qualified to seek and hold the public office for which such candidate is offering.  O.C.G.A. § 21-2-5(b), (c).

---

[1] The Secretary of State may on his own motion challenge the qualifications of any candidate at any time prior to the election of such candidate. O.C.G.A. § 21-2-5(b).

If the Secretary of State determines that the candidate is not qualified, the Secretary of State will withhold the name of the candidate from the ballot or strike such candidate's name from the ballot if the ballots have been printed. O.C.G.A. § 21-2-5(c). If there is insufficient time to strike the candidate's name or reprint the ballots, a prominent notice will be placed at each affected polling place advising voters of the disqualification of the candidate, and all votes cast for such candidate shall be void and shall not be counted. *Id.*

The Secretary of State's determination is subject to judicial review, and either the voter filing the challenge or the candidate have the right to appeal by filing a petition in the Superior Court of Fulton County. O.C.G.A. § 21-2-5(e). A reviewing court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the findings, inferences, conclusions, or decisions of the Secretary of State are, *inter alia*, based upon an error of law or in excess of the statutory authority of the Secretary of State. *Id.* Review of the superior court's final judgment in a candidacy challenge then lies with the Supreme Court of Georgia. *See Burke v. Liberty Cnt'y Bd. of Elections*, 291 Ga. 802, 803 (2012) (candidacy challenges are election contests that fall within the exclusive appellate jurisdiction of the Supreme Court).

**B.      The Voter Challenge to Greene's Qualification as a Candidate for U.S. Representative**

Greene submitted her filings to run in the primary election for Georgia's 14th Congressional District. (Doc. 3, Compl., ¶ 10.)   Interested voters challenged Greene's qualifications pursuant to Section Three of the Fourteenth Amendment.[2] (Doc. 3-1, Ex. A to Compl.) The Secretary of State is not a party to this challenge, but his office forwarded the challenge to OSAH in compliance with the Challenge Statute. By a Notice dated March 25, 2022, the OSAH hearing on the challenge to Greene's qualifications was set for April 13, 2022, to be heard by ALJ Beaudrot. (Ex. A to Response Br., filed contemporaneously herewith.)

Before any ruling could be made by OSAH or the Secretary of State regarding the challenge to her qualifications, Greene initiated this lawsuit on April 1, 2022, alleging that the Challenge Statute violates her First

---

[2] Section 3 of the Fourteenth Amendment provides that:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Amendment rights (Count I) and deprives her of due process in violation of the Fourteenth Amendment (Count II).  (Doc. 3, Compl., ¶¶ 54-65.)  She also contends that the Challenge Statute violates Article I, Section 5 of the U.S. Constitution because it "usurps" the U.S. House of Representative's power to make a determination regarding the qualification of its members (Count III). (*Id*., ¶¶ 66-71.)  Finally, Greene contends that, as applied here regarding the electors' challenge that she is not qualified to serve pursuant to Section 3 of the Fourteenth Amendment, the Challenge Statute violates the Amnesty Act of 1872 (Count IV).  (*Id*., ¶¶ 72-77.)

## ARGUMENT

### I.   The Court Should Refrain from Exercising Jurisdiction Under the *Younger* Abstention Doctrine.

The Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971) explained that "a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986) (citing *Younger*, 401 U.S. at 43). Since *Younger*, the Supreme Court has expanded the *Younger* abstention doctrine to three "exceptional circumstances", which are (1) criminal proceedings; (2) civil proceedings akin to a criminal proceeding; and (3) civil

proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs. Inc. v. Jacobs*, 571 U.S. 69, 69-70 (2013). Accordingly, in determining whether to abstain from enjoining a state proceeding under *Younger*, it should determine if the state proceeding meets one of the three "exceptional circumstances," and, if so, whether: (1) the state proceedings constitute an ongoing state judicial proceeding, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceeding to raise constitutional challenges. *Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254, 1268 (11th Cir. 2019) (citing *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

This action falls into the third "exceptional circumstance" explained in *Sprint*. Greene seeks to stop and have this Court interfere with Georgia's unique judicial process of ensuring that only candidates that meet the statutory and constitutional qualifications for office are placed on the ballot, which is its duty under Article I, Section 4 to regulate "the Times, Places and Manner of holding Elections for Senators and Representatives." In applying *Younger* to this third category of "special situations," the Supreme Court has explained that it "repeatedly has recognized that the States have important interests in *administering certain aspects of their judicial systems*." *Pennzoil*

*Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987) (emphasis added). As explained in more detail *infra*, the state has a great interest, and a constitutional duty, to ensure that only qualified candidates are placed on the ballot, and Greene asks this Court to undermine this unique judicial process that fulfills Georgia's constitutional duties by banning it altogether. And even if one believes the pending challenge proceeding does not fit squarely in the third category of "exceptional circumstances" for the application of *Younger* because an "order" has not yet issued (but eventually will), *Younger* abstention still is appropriate because Greene is attempting to enjoin the administration of one aspect of the state judicial system. Coupled with the fact that the State has a constitutional duty in ensuring only qualified candidates are placed on ballots, this case falls in the realm of "exception circumstance" ripe for *Younger* abstention.

Because this action falls into the one of the *Younger* abstention categories, the application of the three factors for abstention require this Court to abstain.  Specifically, there can be no serious dispute that the underlying candidacy challenge is an "ongoing state judicial proceeding." *Tokyo Gwinnett*, 940 F.3d at 1268 ("a state proceeding is 'ongoing' if it was pending at the time the federal lawsuit was filed"). Indeed, Greene concedes in her verified complaint that the pending challenge to her qualifications was filed on March 24, 2022, which was eight days *before* she filed this action.  (Doc. 3, at 10-11.)

9

That challenge is proceeding in normal course and an evidentiary hearing is already scheduled for April 13, 2022. (*See* Doc. 9, Ex. D. to Compl.).

The pending challenge proceeding before OSAH is also a "judicial" proceeding, as OSAH serves as the adjudicating body for state administrative agencies. *See* O.C.G.A. § 50-13-40(a). OSAH fact-finders are administrative law judges. O.C.G.A. § 50-13-41. Proceedings before OSAH share many of the same features as civil proceedings in state court: judges can issue subpoenas, impose civil penalties for failing to obey a lawful order, administer oaths and affirmations, and dispose of motions to dismiss for lack of agency jurisdiction and any other ground. *Id.*, §§ 50-13-41(a)(2); 50-13-13(a)(6). Additionally, Georgia law requires OSAH to utilize the rules of evidence that apply to non-jury civil proceedings. *Id.*, § 50-13-15(1). *See also Mack II v. City of Atlanta*, 227 Ga. App. 305, 307 (1997) (explaining that an administrative proceeding is judicial in nature when the parties involved have the right to a hearing in accordance with judicial procedure).

The challenge proceeding also implicates important state interests. According to the Supreme Court, "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system . . . evidence the state's substantial interest in the litigation," and that "[w]here vital state interests are involved, a federal court should abstain unless state

10

law clearly bars the interposition of the constitutional claims." *Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The underlying challenge proceeding, conducted pursuant to O.C.G.A. § 21-2-5, implicates Georgia's constitutional authority to regulate the times, places, and manner of holding elections. *See* U.S. CONST. art. I, § 4, cl. 1. Specifically, the Challenge Statute ensures that only qualified candidates are placed on the ballot, which the Supreme Court has said is a function of the states under their Article I, Section 4 powers. *See Storer v. Brown*, 415 U.S. 724, 726 (1974) (stating "a state has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies.") (citation and quotation omitted). Thus, because Greene is attempting to enjoin the state from performing its constitutional duties with regards to elections—ensuring that only candidates that meet the statutory and constitutional qualifications for office are placed on the ballot—important state interests are implicated.

Finally, Greene has an adequate opportunity in the state proceeding to raise the same constitutional challenges raised here. Greene's primary argument against *Younger* abstention is that she is unable to raise constitutional arguments in OSAH.  But that is simply wrong.  Although *Younger* abstention does not apply when "state law clearly bars interposition

11

of the constitutional claims," *Middlesex*, 457 U.S. at 432, the "pertinent inquiry...is whether the state proceedings afford an adequate opportunity to raise the Constitutional claims." *Id.* (quotation marks omitted). For *Younger* applicability to administrative proceedings, the Supreme Court has held that it is sufficient "that constitutional claims may be raised in state-court judicial *review* of the administrative proceeding." *Ohio Civil Rights Comm'n*, 477 U.S. at 629 (emphasis added).

Here, the challenge proceeding affords Greene an adequate opportunity to raise her constitutional and federal law claims. Indeed, Georgia law specifically provides OSAH with the ability to dispose of cases on any grounds, including lack of agency jurisdiction over the subject matter or parties. O.C.G.A. § 50-13-13(a)(6).[3] And there are numerous examples of state administrative cases in which parties' constitutional arguments were

---

[3] Pursuant to Georgia's Administrative Procedure Act, an ALJ has the authority to, among other things, dispose of motions to dismiss for any grounds. O.C.G.A. § 50-13-41(a)(2) (providing that an ALJ has the power to do all things specified in O.C.G.A. § 50-13-13(a)(6)). OSAH's Administrative Rules of Procedure explicitly provide for parties to make requests to the ALJ by motion. Ga. Comp. R. & Regs. 616-1-2-.16. OSAH's ALJs can grant a motion to dismiss a candidacy challenge. Furthermore, a party to an OSAH proceeding could also file a motion for summary determination on the basis that there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. Ga. Comp. R. & Regs. 616-1-2-.15(1).

considered by Georgia courts on appeal, and in the administrative hearing below. *See, e.g., Ga. Dep't of Human Servs. v. Steiner*, 303 Ga. 890, 893-94 (2018) (raising constitutional arguments in the administrative hearing and on appeal in the Georgia trial and appellate courts); *Cox v. Barber*, 275 Ga. 415, 418-19 (2002) (considering constitutional challenge to candidate residency requirements for Public Service Commissioner).[4]

The mere fact that Greene has raised a constitutional objection to the challenge proceeding does not render abstention inappropriate. Indeed, the Supreme Court has "repeatedly rejected the argument that a constitutional attack on state procedures themselves automatically vitiates the adequacy of those procedures for purposes of the [*Younger*] line of cases." *Ohio Civil Rights Comm'n*, 477 U.S. at 628. To the contrary, there is "no reason to doubt that [Greene] will receive an adequate opportunity to raise [her] constitutional claims" during the challenge proceeding. *Id.*

---

[4] This includes constitutional challenges based on federal law, because "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (citations omitted); *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981) ("The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.").

In sum, because Greene has asked the Court to enjoin an ongoing judicial proceeding implicating important state interests, and the proceeding will provide Greene the opportunity to raise her constitutional arguments, this Court should abstain from exercising its jurisdiction under *Younger*.[5]

## II.     Greene lacks standing, and her claims are not yet ripe.

In addition to abstaining under *Younger*, the Court should decline to exercise jurisdiction over Greene's claims because they are not ripe for adjudication, and Greene has not sufficiently pled an injury in fact sufficient to establish Article III standing.

---

[5] In Greene's motion for a temporary restraining order, she attached an order from a case in the United States District Court for the Eastern District of Northern Carolina involving a challenge to a North Carolina statute authorizing candidate qualification challenges. (Doc. 4-2.). The candidate in that case raised the same or similar arguments that Greene raises here. (*see id*. at 1-5.) The district court in that case declined to abstain under the *Younger* abstention doctrine. (*Id*. at 13-19.) However, the order should not be used as a guidepost for this Court's decision here because the reasons the district court declined to abstain are not present in this case.  First, the North Carolina district court concluded that the underlying state proceeding there was not ongoing under Fourth Circuit precedent because they were stayed. (*Id*. at 18). Here, however, it is undisputed that the challenge proceeding to Greene's qualifications at issue here is ongoing. (Doc. 3 at 10-11). Second, the North Carolina district court determined that, under North Carolina law, an individual could not raise constitutional arguments in the administrative proceedings. (Doc. 4-2 at 18-19).  That is also not the case here, because, as argued *supra*, Greene can raise her constitutional arguments before OSAH and on appeal.

In order to establish Article III standing, Greene must demonstrate injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The ripeness doctrine raises both jurisdictional and prudential concerns, and asks "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006); *see also Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing." *Elend*, 471 F.3d at 1205.

Greene fails to demonstrate that she has suffered an injury in fact that is "actual and imminent," rather than conjectural or hypothetical. *Lujan*, 504 U.S. at 560. She furthermore has not shown that the factual predicate for her alleged injury—namely, her potential disqualification—has sufficiently materialized to the point where it is ripe for adjudication. Although Greene points to the initiation of the challenge proceeding as evidence of an injury in fact (*see* Doc. 4-1, at 11), she does not allege that either State Defendants have actually deprived her of a constitutional right—only that the Secretary of State "has the power to prevent Rep. Greene's name from appearing on the ballot."

15

(*Id*, at 12). In other words, Greene is asking this Court to *assume* that the Secretary of State will ultimately disqualify her under the basis asserted by the challengers—an outcome that is entirely conjectural and hypothetical at this point in the proceeding—and enjoin the proceeding based upon this assumption. However, the mere fact that Greene may be required to participate in the challenge proceeding, without more, is not a constitutional injury sufficient to establish standing, nor is the claim ripe for adjudication.

## III. Greene cannot satisfy the required elements for a preliminary injunction or temporary restraining order.

Finally, even if the Court were to exercise jurisdiction over Greene's claims, her motions seeking a TRO or preliminary injunction should be denied because she cannot meet the required elements. To support a preliminary injunction or a TRO, a district court must determine whether the evidence establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not be adverse to the public interest. *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1306 (N.D. Ga. 2020) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

An injunction is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quoting *Klay v. United Healthgroup, Inc.* 376 F.3d 1092, 1098 (11th Cir. 2004)). Because an injunction is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue. *U.S. Army Corps of Engineers*, 424 F.3 at 1127 (citations omitted).

### A. Greene is not likely to succeed on the merits of her claims.

Greene asserts both facial and as-applied constitutional challenges to the Challenge Statute, arguing that it violates her right to be a candidate for federal office under the First and Fourteenth Amendments. She further contends that the Challenge Statute violates Article I, Section 5 of the U.S. Constitution because it "usurps" the U.S. House of Representative's power to make a determination regarding the qualification of its members. None of these claims are likely to succeed on the merits.

17

### 1. The Challenge Statute does not violate the First and Fourteenth Amendment.

It is well established that states have an important interest in regulating candidate access to the ballot. *See, e.g., Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Storer v. Brown*, 415 U.S. 724, 732 (1974); *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Contrary to Greene's assertion, candidacy is not a fundamental right under the First or Fourteenth Amendment, and there is certainly no constitutionally-protected right to run for office if the candidate does not meet the constitutional requirements for federal office. Courts have recognized, however, that restrictions affecting candidates can have a derivative effect on the fundamental right to vote. *See Bullock v. Carter*, 405 U.S. 134, 143 (1972). But still, "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Anderson*, 460 U.S. at 788. Thus, "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (quoting *Bullock*, 405 U.S. at 143); *see also Grizzle v. Kemp*, 634 F.3d 1314, 1321 (11th Cir. 2011).

In reviewing challenges to restrictions on candidacy or ballot access under the First and Fourteenth Amendments, courts are to apply the

*Anderson-Burdick* framework, which weighs the "character and magnitude of the asserted injury" against the state's asserted interests. *Anderson v. Celebreeze*, 460 U.S. 780, 789 (1982). The rigorousness of the Court's inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). When "those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (citations omitted). "Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick*, 504 U.S. at 434).[6]

To the extent the Challenge Statute imposes any sort of restriction on ballot access, it is a reasonable, nondiscriminatory restriction that imposes a minimal burden on candidates. The vast majority of candidates will never face a candidacy challenge. But when a challenge is filed, candidates are required to prove they are eligible to stand for office by a mere preponderance of the

---

[6] It is not clear whether Greene is asserting a procedural due process claim or a substantive due process claim under the Fourteenth Amendment. But the distinction is not important, as the Eleventh Circuit has held that due process challenges to laws affecting elections should be analyzed under the *Anderson-Burdick* framework. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020).

evidence. *Haynes v. Wells*, 273 Ga. 106, 108 (2000); Ga. Comp. R. & Regs. 616-1-2-.21(4). Although Greene asserts that this alleged "burden-shifting" to the candidate is constitutionally impermissible, she fails to cite a single case in support of this argument, which relies on the absurd premise that it should be the *voters'* burden to prove a candidate's ineligibility—an argument that has been expressly rejected by Georgia's Supreme Court. *See Haynes*, 273 Ga. at 108-09 (holding that the challenger "is not required to disprove anything regarding [the candidate's] eligibility to run for office").

Moreover, any slight burden imposed by the Challenge Statute is outweighed by the compelling interest of the state and the voters. It is axiomatic that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer*, 415 U.S. at 730. "[A] State has an interest, if not a duty to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock*, 405 U.S. at 145; *see also Anderson*, 460 U.S. at 788; *Jenness*, 403 U.S. at 442.

The Challenge Statute plainly advances this important state interest. Undoubtedly, the public's interest in having only eligible candidates on the ballot more than outweighs any burden that may be imposed on candidates facing a challenge proceeding. If a candidate for U.S. Representative is elected

by a majority of voters in the general election and then subsequently is disqualified, voters would be disenfranchised. Moreover, the state and counties would be required to incur the significant expense of a special election to fill the resulting vacancy. *See* O.C.G.A. § 21-2-543. To conduct a new election after a candidate is disqualified from taking office would be a tremendous waste of state and county resources and harmful to voter confidence in the electoral process.

In sum, the Challenge Statute is a "reasonable, nondiscriminatory restriction" on ballot access that is more than justified by the state's "important regulatory interests," *Timmons,* 520 U.S. at 358, and Greene is unlikely to succeed on the merits of her First and Fourteenth Amendment claims.

### 2. The Challenge Statute does not violation Article I, Section 5.

Contrary to Greene's argument, the Challenge Statute does not usurp the Congress's power to be "Judge of the Elections, Returns and Qualifications of its own Members" under Article I, Section 5. (Doc. 4-1, at 19-20.) Rather, the state's powers under Article I, Section 4 and the Congress's powers under Article I, Section 5 are complimentary. *See Roudebush v. Hartke*, 405 U.S. 15, 24-26 (holding that Article 1, Section 4 gives the states the ability to conduct a

recount for a U.S. Senate election without usurping the Senates authority to judge the election results under its Article I, Section 5 powers).

The U.S. Constitution "anticipates that the electoral process is to be largely controlled by the states and reviewed by the legislature." *Hutchinson v. Miller*, 797 F.2d 1279, 1283 (4th Cir. 1986). States have the authority to regulate *candidates* and *elections* for federal office, while Congress retains the authority to regulate its *members* after they are elected. *See id.*; *see also Roudebush*, 405 U.S. at 24-26; *McIntyre v. Fallahay*, 766 F.2d 1078, 1083 (7th Cir. 1985). Thus, while Congress can decline to seat a candidate who has won election as a U.S. Representative, the states have the constitutional authority to regulate which candidates for U.S. Representative are placed on the ballot and the manner of the election.

Thus, there is no legal support for Greene's argument that states are prohibited under Article I, Section 5 from requiring candidates for federal office to demonstrate their qualifications for office if a pre-election challenge is raised. State ballot regulations are the only mechanism for determining candidate qualifications before voters cast their ballots. If states were enjoined from disqualifying candidates for federal office prior to an election, then there would be no legal process by which the state could prevent candidates who fail to meet the constitutional requirements for Congress from accessing the ballot.

The Qualifications Clause provides that no person may serve as a U.S. Representative unless that person is at least twenty-five years old, has been a citizen of the United States for at least seven years, and be an inhabitant of the state when elected. U.S. CONST. art. I, § 2, cl. 2. The unregulated process urged by Greene would invite the possibility that fraudulent or unqualified candidates such as minors, out-of-state residents, or foreign nationals could be elected to Congress—and the state would be powerless to prevent it from happening.

### B. Greene has failed to demonstrate that she would be irreparably injured if a preliminary injunction is not granted.

To succeed under the second preliminary injunction factor, Greene must show "a substantial likelihood of irreparable injury" absent a preliminary injunction. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). As the Eleventh Circuit has emphasized, the asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *NE Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

Greene's motion makes the threadbare assertion that she faces irreparable harm because she faces a deprivation of her constitutional rights. (Doc. 4-1, p. 24) But as noted above, Greene has not been deprived of any

constitutional right, and the possibility that Greene may be disqualified from the ballot at some point in the future remains entirely speculative and remote. The mere fact that she may be forced to participate in the qualifications challenge before OSAH is not, on its own, irreparable harm. Greene will have the opportunity to present evidence and argument in her defense, including the constitutional arguments raised in this action. The ultimate determination by the Secretary of State is subject to judicial review, and Greene would have the right to appeal any unfavorable decision to the Georgia Supreme Court and the U.S. Supreme Court. And if the decision is ultimately in her favor, this action becomes moot. Therefore, it is not substantially likely that Greene faces irreparable harm absent an injunction.

### C. The balance of equities and the public interest weighs against enjoining the challenge proceeding.

Courts in this district have considered the remaining two factors, balancing the equities and public interest, together in election cases. *See Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018). Both of these factors clearly weigh in favor of the State Defendants.

As discussed above, the state has an important and well-established interest in regulating ballot access and preventing fraudulent or ineligible candidates from being placed on the ballot. Allowing the state to disqualify

ineligible candidates before an election takes place saves voters from being disenfranchised, and saves counties the significant expense of holding a special election if an ineligible candidate is elected by the voters and later disqualified. And importantly, the public's confidence in the integrity of the ballot is fundamental to representative government, and more than outweighs any burden that may be imposed on candidates facing a challenge proceeding.

In sum, because Greene cannot demonstrate that she is likely to succeed on the merits of her claims, that she is likely to face irreparable harm absent an injunction, or that that the balance of the equities and public interest favor an injunction, her motions should be denied.

## CONCLUSION

For the reasons discussed above, Greene's motions for a temporary restraining order and a preliminary injunction should be denied.

Respectfully submitted this 6th day of April, 2022.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

*/s/ Charlene McGowan*
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
Office of the Georgia Attorney General
40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
Telephone: 404-458-3658
Fax: 404-651-9325

*/s/ Lee M. Stoy, Jr.*
Lee M. Stoy, Jr.
Assistant Attorney General
Georgia Bar No. 884654
Office of the Georgia Attorney General
40 Capitol Square SW
Atlanta, Georgia, 30334
lstoy@law.ga.gov
Telephone: 404-458-3661
Fax: 404-657-9932

26

_/s/ Elizabeth Vaughan_
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
evaughan@law.ga.gov
Telephone: 404-458-3549
Fax: 404-657-9932

_Counsel for Defendants Raffensperger and Beaudrot_

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Elizabeth Wilson Vaughan*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 6, 2022, I have electronically filed the foregoing DEFENDANTS RAFFENSPERGER AND BEAUDROT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties of record via electronic notification.

*/s/ Lee M. Stoy, Jr.*
Lee M. Stoy, Jr.
Georgia Bar No.  884654
Attorney for the Defendants

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 458-3661
FAX: (404) 657-9932
Email: lstoy@law.ga.gov