# UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **MARJORIE TAYLOR GREENE**, an individual, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **MR. BRAD RAFFENSPERGER**, in his official capacity as Georgia Secretary of State, **MR. CHARLES R. BEAUDROT,** in his official capacity as an Administrative Law Judge for the Office of State Administrative Hearings for the State of Georgia, **JOHN DOE 1**, in his official capacity, and **GOVERNMENT ENTITY 1**, <br> *Defendants*. | **Civ. No.   1:22-cv-01294-AT** |

**Plaintiff's Reply in Support of Plaintiff's Motion for Preliminary Injunction**

**Pl.'s Reply ISO**
**TRO and PI**

## Introduction

Plaintiff Marjorie Taylor Greene's ("**Rep. Greene**") candidacy for Congress has been challenged by voters with Georgia's Secretary of State, Brad Raffensperger ("**Sec. Raffensperger**").[1] But Georgia's Challenge Statute is unconstitutional in several respects and it is unlawful to apply Section Three of the 14th Amendment ("**§ 3**") to Rep.  Greene. Rep. Greene should not be subjected to the requirement to defend herself under such an unconstitutional statutory scheme and based on an unlawful candidate challenge.

## Argument

### I. This Court can properly exercise its jurisdiction[2] over this matter and over Sec. Raffensperger.

**A.  Rep. Greene has Article III standing.**

**1.   Rep. Greene has alleged an actual, particularized injury.**

Rep. Greene is subject to the Challenge Statute and potential disqualification under § 3. If successful, a Challenge to her candidacy would prevent her from

---

[1]All Defendants are named in this suit in their official capacities. For the pur-poses of this Reply, "Sec. Raffensperger" refers collectively to Defendants.

**Pl.'s Reply ISO**
**TRO and PI**                    2

running for Congress.  Citizens have a constitutionally protected right to run for public office, *Cook v. Randolph Cty.*, Ga., 573 F.3d 1143, 1152 (11th Cir. 2009), which is quintessential First Amendment activity. Her potential injury is not in any way hypothetical—not only is Rep. Greene subject to the Challenge Statute and a candidate challenge under § 3, as a Challenge was recently filed against her.

Sec. Raffensperger asserts that Rep. Greene's alleged injuries are entirely speculative at this early stage of litigation, because Sec. Raffensperger has not made a determination on Rep. Greene's qualifications. (ECF 22 at 15-16). Sec. Raffensperger argues Rep. Greene "ask[s] this Court to assume that the Secretary of State will ultimately disqualify her under the basis asserted by the challengers." *Id.* at 16. Sec. Raffensperger asserts "the mere fact that [Rep.] Greene may be required to participate in the challenge proceeding, without more, is not a constitutional injury sufficient to establish standing." *See id.*

Sec. Raffensperger conflates the injury Rep. Greene would sustain if she is disqualified after a factual determination on the Challenge is reached with her separate injury of being subject to a challenge under the Challenge Statute, which employs an unconstitutional process that violates her First Amendment and Due

**Pl.'s Reply ISO**
**TRO and PI**                3

Process rights.  Complaint, Counts I and II.  Being dragged though and being

subject to an unconstitutional process is a constitutional injury that confers Article

III standing.

Furthermore, electoral chaos is virtually assured by the Challengers' plan, if a

disqualification occurs before Rep. Greene constitutional and federal law defenses

can be heard, under Georgia procedure employed here, which can only be litigated

in state court by judicial review of the Sec. of State's decision.  Furthermore,

voters' votes are subject to disqualification, when ballots are mail out with Rep.

Greene's name on them, if Rep.  Greene is subsequently disqualified.  These are

all constitutional injuries that confer Article III standing.

### 2.  Rep. Greene's claims are ripe.

The Eleventh Circuit applies a two-prong test to determine ripeness: (1)

whether the issues are fit for judicial decision and (2) whether hardship will fall to

the petitioning party on withholding court consideration. *Elend v. Basham*, 471

F.3d 1199. 1211 (11th Cir. 2006) (citing *Abbott Labs v. Gardner*, 387 U.S. 136,

149 (1967). The ripeness doctrine prevents courts from "entangling themselves in

abstract disagreements over administrative policies." *Abbott Labs v. Gardner*, 387

U.S. 136 (1967), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99
(1977).

Here, Rep. Greene's constitutional claims are fit for a judicial decision, and
she would suffer hardship from this Court withholding its consideration. Rep.
Greene would have to mount a defense to the Challenge in front of ALJ Beaudrot
and appeal any negative decision by the Sec. of State to the Superior Court of
Fulton County before her constitutional claims to the Challenge Statute could even
be considered. In regards to her constitutional claim on the burden shifting
requirement of the Challenge Statute for a § 3 challenge, the constitutional
questions raised here could not be considered until an appeal reached the Georgia
Supreme Court, as that requirement is rooted in that Court's precedent.

Rep. Greene's constitutional claims are not "abstract disagreements over
administrative policies." Her claims cut to the core of several fundamental
constitutional rights, and justice is served by this Court's consideration of those
rights sooner, rather than later.

**B.  The *Younger* abstention doctrine does not apply.**

**1.  The ALJ does not have the authority to decide Rep. Greene's
constitutional claims.**

**Pl.'s Reply ISO
TRO and PI**                              5

Defendants assert that parties' constitutional arguments may be considered by Georgia Courts on appeal and "*in administrative hearings below*." Defs.' Resp. to PI, ECF No. 22 at 12-13 (emphasis added) (citing *Ga. Dep't of Human Servs. v. Steiner*, 303 Ga. 890, 893-94 (2018)). However, *Steiner* said the opposite: the Georgia Supreme Court and the ALJ there "acknowledged that [the ALJ] lacked the authority to decide Steiner's constitutional challenges to the Act, but denied Steiner's motion to declare the Act unconstitutional to preserve the issue for appeal." *Id.* at n.3.

Challengers assert that the "Georgia Supreme Court has made clear that federal constitutional claims can also be a defense in challenges to a candidates' qualifications under [the administrative] procedures." Challengers' Resp. to PI, ECF No. 30 at 6 (citing *Cox v. Barber*, 568 S.E. Second MTD 478, 481-82 (Ga. 2002)); *see also* Defs.' Resp. to PI at 13. The ALJ in Cox only "concluded that Barber did not meet the one-year residency requirement" and the trial court reached the constitutional questions upon judicial review. *Id.* at 479-80. There is simply no support in *Cox* for Defendants' and Challengers assertion that the constitutional questions were considered by the ALJ, in fact the opposite is true.

Of course, constitutional challenges may be *raised* to the ALJ here—as Rep. Greene has done. But under Georgia law, raising constitutional claims against a statute at issue to the ALJ serves one purpose—to preserve the issues on appeal. ALJ's do not have the authority to decide whether a particular statute is or is not unconstitutional, either facially, or as applied, or that a § 3 challenge here is unconstitutional or unlawful under federal law.

## 2. The Supreme Court's presumption in *Ohio Civil Rights Comm'n* does not apply to Plaintiff's claim to the Challenge Statute based on unconstitutional burden shifting to Challenges based in § 3 in Georgia.

Both Defendants and Challengers assert that sufficient review which would support *Younger* abstention is available here. *See* Defs.' Resp. to PI, ECF No. 22 at 12-13; Challengers' Resp. to PI, ECF No. 30 at 6-7.  This is particularly without merit regarding Rep. Greene's constitutional claim that the burden shifting requirement in a § 3 Challenge violates due process.[3]

The United States Supreme Court did hold that, for purposes of *Younger*, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review

---

[3]Rep. Greene never asserts that such a burden shifting requirement is always unconstitutional in a candidacy challenge—only that it is unconstitutional as applied to a § 3 challenge because it requires her to prove a negative (i.e., she did not engage in insurrection) versus a requirement to provide positive proof of age or residency. Ver. Compl., ECF No. 3 at ¶¶ 60-65.

**Pl.'s Reply ISO
TRO and PI**                    7

of the administrative proceedings." *Ohio Civil Rights Com'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629 (1986). But the Court based that holding on a presumption that "even if Ohio law is such that the Commission may not consider the constitutionality of the statute under which it operates, it would seem an unusual doctrine . . . to say the Commission could not construe its own *statutory mandate in the light of federal constitutional principles*." *Id.* at 629 (emphasis added). The burden shifting in Georgia is not as a result of a statutory mandate that the ALJ may "construe in light of federal constitutional principles," but is the result of a Georgia Supreme Court mandate. *Haynes v. Wells*, 273 Ga 106, 108 (2000).[4] Just as the ALJ has no authority to determine the constitutionality of a statute, an ALJ certainly would not have the authority to ignore or overturn Georgia Supreme Court precedent. So, only after being required to comply with this unconstitutional burden shifting requirement under a § 3 challenge in a hearing before the ALJ, and suffering the risk of an unconstitutional and unlawful disqualification driven by the burden shift by Sec. Raffensperger, could Rep.

---

[4] Defendants also cite. to Ga. Comp. R. & Regs. 616-1-2-.21(4) to support their assertion that the candidate is required to prove eligibility for office by a mere preponderance of the evidence. The burden shifting framework in this regulation applies to a challenge to the "regularity by which the Referring Agency reached a decision," not to a candidacy challenge.

**Pl.'s Reply ISO**
**TRO and PI**                    8

Greene finally have her opportunity to litigate the constitutionality of this burden

shifting framework as applied to a § 3 challenge in state court.

### 3.   Exceptions to *Younger* abstention also apply here.

*Younger* abstention has several exceptions applicable here. Some exceptions

include "bad faith, harrassment, or a patently invalid state statute." *Watson v. Fla.

Judicial Qualifications Comm'n*, 618 Fed.Appx 487, 490 (11th Cir. 2015).

Further, "extraordinary circumstances may justify an exception to *Younger*

abstention when the state court cannot fairly and fully adjudicate the constitutional

issues and the plaintiff presents an extraordinarily pressing need for immediate

federal equitable relief." *Id.* (quoting *Kugler v. Helfant*, 421 U.S. 117, 124-25

(1975).

Here, it is impossible for the state court to "fairly and fully adjudicate the

constitutional issues" before Rep. Greene would face extraordinary harm. While

Rep. Greene is required to raise her constitutional claims in the OSAH proceeding

to preserve them for appeal, the ALJ is unable to consider those claims. Neither

the Secretary of State nor the ALJ has the power under the Challenge Statute to

determine its constitutionality or the federal law questions at issue here.

It will be impossible for any state court judicial review on the constitutional claims to finish before Rep. Greene would face irreparable harm. "If the Secretary of State determines that [Rep. Greene] is not qualified, the Secretary of State shall withhold the name . . . from the ballot." Ga. St. § 21-2-5(c). While a candidate has the right to appeal the decision of the Secretary of State, "[t]he filing of the petition shall not itself stay the decision of the Secretary of State." Ga. St. § 21-2-5(e). It is impossible for Rep. Greene to raise and have her constitutional claims "fairly and fully adjudicated" until after her name has already been stricken from the ballot.

In the event of an unfavorable decision, Rep. Greene's constitutional claims will not be heard until she has already been removed from the ballot. Further, it is unlikely that even the first layer of judicial review in the Georgia Superior Court of Fulton County will occur before the May primary, and certainly not before absentee ballots without Rep. Greene's name on them, have been mailed. This will effectively eliminate Rep. Greene's chance to be nominated as the Republican candidate for the 14th Congressional District.

In order for her constitutional claims to be "fairly and fully adjudicated" before

she faces irreparable harm, this Court must exercise jurisdiction. This case falls

within an exception to *Younger* abstention as the state court judicial review

"cannot fairly and fully adjudicate the constitutional issues" before Rep. Greene

will face irreparable harm.

Because the ALJ does not have the authority to decide the constitutional

claims, the Supreme Court's presumption in *Ohio Civil Rights Comm'n* does not

apply to the claims based on the unconstitutional burden shifting to Challenges

based in § 3, and because the extraordinary circumstances present here justify an

exception to *Younger* abstention, this court should exercise jurisdiction over this

case.

## II. Rep. Greene is likely to succeed on the merits.

### A.  Rep. Greene's First Amendment and Due Process claims are likely to succeed.

Sec. Raffensperger argues that the *Anderson-Burdick* framework applies to

Rep. Greene's First and Fourteenth Amendment claims. *See* ECF 22 at 18-21.

However, each of those cases involved a *voter* challenging an election law. *See*

*Anderson v. Celebrezze*, 460 U.S. 780, 782-82 (1983) (voters challenging a filing

deadline); *Burdick v. Takushi*, 504 U.S. 428, 430 (1992) (voter challenging

**Pl.'s Reply ISO**
**TRO and PI**                                    11

prohibition on write-in voting). Even if the rigorousness of the Court's inquiry

depends on the "extent to which a challenged regulation burdens First and

Fourteenth Amendment rights," *Burdick,* 504 U.S. at 434, the burden that Rep.

Greene faces is so severe that "the regulation must be narrowly drawn to advance a

state interest of compelling importance." *Id.*

Sec. Raffensperger argues that the burden that Rep. Greene faces is minimal.

That is not the case. It is not as if Rep. Greene is being asked to prove she is over

the age of 25 to run for the House of Representatives (which would require only

showing a birth certificate to prove). Instead, she is being asked to participate in a

whole trial, as the defendant being asked to prove her innocence, while her guilt is

already presumed.

In this challenge, the burden shifts to Rep. Greene in order to prove that she

did not participate in an insurrection. This burden is enormous on her First and

Fourteenth Amendment rights. This Court's inquiry must be just as rigorous as

well. The cases Sec. Raffensperger cites to are not dispositive. In *Anderson*, the

challenge was to a candidacy filing deadline that the voters' preferred candidate

missed. 460 U.S. at 782-83. The Court found that the "March filing deadline

**Pl.'s Reply ISO**
**TRO and PI**                                    12

places a particular burden on an identifiable segment of Ohio's independent-minded voters." *Id.* at 792. This burden outweighed any of the state interests in imposing such a deadline. *Id.* at 806. In *Burdick*, the challenge was to a prohibition on write-in voting. 504 U.S. at 430. There, it was found that the regulation imposes no burden on any right. *Id.* at 434.

The burden that Rep. Greene faces is more than just a filing deadline. She must prove a negative—that she did not participate in an insurrection. This is much more than what the normal challenged candidate has to face. *See Haynes v. Wells*, 273 Ga. 106, 108-109 (2000) (Candidate required to prove they live in the district where they are running).

Further, Rep. Greene agrees that the Challenge Statute provides a process for defense, but she claims a critical part of that process—the burden shifting to the Candidate to prove she did not engage in insurrection or rebellion against the United States—is unconstitutional.

In *Speiser v. Randall*, the Court found that the statutorily provided burden shifting process violated the Fourteenth Amendment because "[w]hen the State undertakes to restrain unlawful advocacy it must provide procedures which are

**Pl.'s Reply ISO**
**TRO and PI**                  13

adequate to safeguard against infringement of constitutionally protected rights—rights which we value most highly and which are essential to the workings of a free society." 357 U.S. 513, 521 (1958). The Court held that the First Amendment rights at stake were so fundamentally important, the burden shifting provision (which required veterans to prove they didn't advocate for the overthrow of the government) violated the due process clause without analysis of whether a "liberty" interest in free speech was at stake. *Id.* at 517, n.3.

*Speiser* is squarely on point here—when First Amendment rights are involved, a burden shifting framework which requires someone to prove a negative, is unconstitutional.

The burden on Rep. Greene's First and Fourteenth Amendment rights is so enormous that it requires an exceedingly rigorous inquiry from the Court.

## C.  Rep. Greene's claim based upon Article 1, § 5 of the U.S. Constitution is likely to succeed.

Sec. Raffensperger argues that the State's determination of a candidate's qualifications does not implicate the Constitution's mandate that only the U.S. House of Representatives can determine the qualifications of its Members because a Candidate is not a Member. (ECF 22 at 21-23). But a State cannot add

**Pl.'s Reply ISO**
**TRO and PI**                                  14

qualifications. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).

This Challenge based upon Section Three of the Fourteenth Amendment uniquely implicates the House's role in determining qualifications of its Members. Section Three allows Congress to remove the political disability by a two-thirds vote of each House. U.S. Const. Amend. XIV, § 3. Put differently, a state like Georgia can't condition ballot access on whether, as of today, you've engaged insurrection, because it would add a qualification. *Id.*

**D.  Rep. Greene is likely to succeed on the Amnesty Act claim.**

Under the plain language of the Amnesty Act of 1872, Congress removed all political disabilities imposed by Section 3 of the Fourteenth Amendment, except for those specifically enumerated. Since Section Three does not apply to Rep. Greene, the application of Section Three to Rep. Greene is prohibited by federal law. Sec. Raffensperger does not contest this claim so it is conceded.

**III. The considerations of irreparable harm, balance of equities, and public interest favor Rep. Greene.**

Sec. Raffensperger asserts that Rep. Greene will not suffer irreparable harm because she is not disqualified from the ballot yet and will have the ability to appeal any unfavorable decision up to the Georgia Supreme Court and U.S.

**Pl.'s Reply ISO**
**TRO and PI**                                  15

Supreme Court. (ECF 22 at 23-24) That's not the point. Rep. Greene should not be subject to a constitutionally infirm statute. (ECF 5-1 at 24-25). Requiring her to defend herself based upon a process which violates her First and Fourteenth Amendment rights, is an irreparable harm in and of itself. *Id.* Likewise, the balance of equities and the public interest is always best served by not permitting the government to violate constitutional rights in the first instance. *Id.*

### Conclusion

For the foregoing reasons, Rep. Greene respectfully requests that a temporary restraining order be issued forthwith, as she is subject to an ALJ hearing on Wed. April 13th, and substantial pretrial requirements and burdens early next week, and that subsequently a preliminary injunction be issued.

**Pl.'s Reply ISO**
**TRO and PI**                16

Dated: April 7, 2022

/s/ Kurt R. Hilbert
Kurt Hilbert, GA Bar No.
352877
THE HILBERT LAW FIRM, LLC
205 Norcross Street
Roswell, GA 30075
T: 770-551-9310
F: 770-551-9311
khilbert@hilbertlaw.com
*Local Counsel for Plaintiff*

Respectfully Submitted,

/s/ James Bopp, Jr.
James Bopp, Jr., Ind. Bar No. 2838-84*
Melena S. Siebert, Ind. Bar No. 35061-15**
THE BOPP LAW FIRM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
msiebert@bopplaw.com
* *Pro hac vice* admission granted
** Pro hac vice admission pending
*Attorneys for Plaintiff*

**Pl.'s Reply ISO
TRO and PI**                    17

# Certificate of Compliance

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as required by the Court in Local Rule 5.1(B).

Respectfully submitted on April 7, 2022.


/s/ James Bopp, Jr.
Attorney for Plaintiff

**Pl.'s Reply ISO
TRO and PI**                           18

## Certificate of Service

I hereby certify that on April 7, 2022, a copy of the foregoing document was filed using the Court's CM/ECF system. Counsel for all parties and Proposed-Intervenors were noticed of this filing through this system.

/s/ James Bopp, Jr.
Attorney for Plaintiff