IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARJORIE TAYLOR GREENE, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. |
| MR. BRAD RAFFENSPERGER, in : | 22-cv-1294-AT |
| his official capacity as Georgia : | |
| Secretary of State, *et al.*, : | |
| : | |
| Defendants. : | |

## ORDER

This matter is before the Court on David Rowan, Donald Guyatt, Robert Rasbury, Ruth Demeter[1], and Daniel Cooper's ("Proposed Intervenors") Motion to Intervene as Defendants [Doc. 13]. For the reasons that follow, Proposed Intervenors' Motion is **GRANTED**.

## I.  Background

Proposed Intervenors are all residents of Georgia's 14th Congressional District, where Plaintiff Marjorie Taylor Greene is currently running for Congress. (Mot., Doc. 13 at 2.) According to the allegations in the Complaint, Plaintiff filed her candidacy on March 7, 2022, (Compl., Doc. 3 ¶ 10), and on March 24, 2022, Proposed Intervenors filed a challenge to Plaintiff's candidacy with the Georgia

---

[1] Ruth Demeter is listed as one of the proposed intervenors in Proposed Intervenors' motion, but Ms. Demeter's name does not appear on the docket. The Clerk is **DIRECTED** to correct the docket to include Ms. Demeter's name.

Secretary of State, Defendant Brad Raffensperger, arguing that Plaintiff is ineligible to run for Congress under O.C.G.A. § 21-2-5 ("the Challenge Statute").[2] (*See* Compl., Ex. A, Doc. 3-1.) Proposed Intervenors claim that Plaintiff is ineligible to run for Congress under Section 3 of the Fourteenth Amendment because she "engaged in insurrection or rebellion" against the United States by helping facilitate the January 6, 2021 insurrection at the U.S. Capitol. (Mot., Doc. 13 at 3.) Secretary Raffensperger referred the matter to the Office of State Administrative Hearings on March 24, 2022 — the same day he received the challenge — so that an Administrative Law Judge could review the matter and hold a hearing on an expedited basis. (Compl., Ex. A, Doc. 3-1 at 1.)

On March 30, 2022, Proposed Intervenors filed a motion with the Administrative Law Judge overseeing the matter, Defendant Charles R. Beaudrot, requesting to take Plaintiff's deposition on April 11, 2022, at 10:00 a.m. (Doc. 8.) That same day, Judge Beaudrot issued an order directing Plaintiff to respond to the Proposed Intervenors' motion to take her deposition by April 4, 2022, at 12:01 p.m. (Doc. 9.) Judge Beaudrot also set a hearing to address Proposed Intervenors' challenge, which is scheduled to commence on April 13, 2022, at 9:30 a.m. (*Id.*)

---

[2] Subsection (a) of the Challenge Statute provides that every candidate for federal or state office who files a notice of candidacy "shall meet the constitutional and statutory qualifications for holding the office being sought." O.C.G.A. § 21-2-5(a). Subsection (b) of the statute adds that within two weeks after the deadline for a candidate to qualify for the ballot, a qualified elector who is eligible to vote for that candidate "may challenge the qualifications of the candidate by filing a written complaint with the Secretary of State giving the reasons why the elector believes the candidate is not qualified." *Id.* § 21-2-5(b).

Plaintiff initiated the instant action on April 1, 2022.[3] (Compl., Doc. 3.) In the Complaint, Plaintiff seeks an order enjoining Defendants from enforcing the Challenge Statute for the purpose of disqualifying her as a candidate for Congress based on Section Three of the Fourteenth Amendment. (*Id.* at 24.) She also seeks an order declaring that the Challenge Statute is unconstitutional under the First and Fourteenth Amendments, as well as Article I, Section 5 of the Constitution, and that the application of the statute based on Section Three of the Fourteenth Amendment is prohibited by federal law. (*Id.* at 23–24.) On the same day she filed the Complaint, Plaintiff also filed an emergency motion for temporary restraining order and motion for preliminary injunction, which are currently pending before the Court. (Docs. 4, 5.) Later that day, Proposed Intervenors notified the Court by telephone that they intended to intervene in the matter. (Mot., Doc. 13 at 4.) Proposed Intervenors ultimately filed their Motion to Intervene on the next business day — Monday, April 4, 2022.[4]

## II.   Legal Standard

Under Federal Rule of Civil Procedure 24(a), the Court must permit parties to intervene as of right when (1) "[their] application to intervene is timely;" (2) "[they have] an interest relating to the property or transaction which is the subject

---

[3] Plaintiff claims that she did not receive actual notice of the challenge to her candidacy until March 31, 2022, because it was sent to an "out of date email address that is no longer regularly checked." (Compl., Doc. 3 at 10 n.1.) Plaintiff acknowledges that this was the same email address that Plaintiff used for her candidacy filing with the Secretary of State's office. (*Id.*)
[4] Defendants indicated in their response that they did not oppose Proposed Intervenors' motion. (*See* Doc. 23 at 1.)

3

of the action;" (3) "[they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest;" and (4) "[their] interest is represented inadequately by the existing parties to the suit." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (internal quotations omitted) (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004)).

By comparison, parties seeking permissive intervention under Federal Rule of Civil Procedure 24(b) must show (1) that the application to intervene is timely, and (2) that the intervenors' claims or defenses share a question of law or fact in common with the main action. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). "The district court has the discretion to deny intervention even if both of those requirements are met, and its decision is reviewed for an abuse of discretion." *Id.* (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983)).

### III. Discussion

#### A. Intervention as of Right

In their motion, Proposed Intervenors first argue that they are entitled to intervene as of right under Rule 24(a). They contend that they have satisfied all four requirements to intervene under this Rule because (1) their motion is timely; (2) they have a strong interest in protecting their right to litigate the underlying challenge; (3) Plaintiff seeks to foreclose their ability to pursue that challenge through the instant lawsuit; and (4) the current Defendants will not adequately

4

represent their interests because they are public officials with different roles in the underlying challenge.

The Court begins with the first requirement: timeliness. To determine whether this requirement is satisfied, the Court must consider both "the length of time during which the [Proposed Intervenors] knew or reasonably should have known of their interest in the case before moving to intervene" and "the extent of prejudice to the existing parties." *Chiles*, 865 F.2d at 1213. In this case, the motion to intervene was filed just one business day after Plaintiff initiated this action. Though Plaintiff does not dispute that Proposed Intervenors filed their motion "promptly," she argues that she would be prejudiced by Proposed Intervenors' intervention because it would delay and further complicate the case. However, the Court has already allocated time for Proposed Intervenors to raise their arguments within the existing briefing schedule, such that their intervention in the case will not delay the hearing on Plaintiff's pending motions for a temporary restraining order and preliminary injunction, which the Court has scheduled for Friday, April 8, 2022. (*See* April 4, 2022 Minute Entry.) Under the circumstances, there is no basis for the Court to conclude that Proposed Intervenors delayed filing their Motion to Intervene or that their intervention in this case would delay the case in any manner that would prejudice the existing parties. The Court therefore finds that Proposed Intervenors have satisfied the first requirement for intervention as of right.

On the second prong, Proposed Intervenors argue that they have a strong interest in the case because Plaintiff seeks to foreclose their statutory right to challenge her candidacy. As Proposed Intervenors note, all they have to show to satisfy this requirement is that they have "a direct, substantial, legally protectable interest in the proceedings." (Mot., Doc. 13 at 7) (quoting *Purcell v. Bank Atl. Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996)). And as Proposed Intervenors also point out, the Challenge Statute grants them a number of statutorily conferred rights, including "the right to challenge Greene's candidacy," "the right to have that challenge heard before an ALJ," "the right to take discovery from Greene," "the right to present evidence at the hearing," "the right to a decision from an ALJ," and "the right to appeal that decision to the Superior Court of Fulton County and the Georgia Supreme Court." (*Id.* at 9–10.) If Plaintiff's lawsuit were successful, Proposed Intervenors would be unable to exercise any of these statutorily conferred rights. Although Plaintiff argues that Proposed Intervenors have no legally protected interest in this case because they have no right to bring what Plaintiff claims is an unlawful challenge to her candidacy, that argument goes to the merits of Proposed Intervenors' challenge rather than their right to bring such a challenge in the first place. Accordingly, the Court finds that Proposed Intervenors have established the requisite legally protected interest in the instant proceeding.

Proposed Intervenors next argue that they have satisfied the third prong because Plaintiff's lawsuit "directly threatens" their interest in challenging the

6

qualifications of an individual who is running for office in their congressional district. To satisfy this prong, as Proposed Intervenors observe, all they have to show is that "they will be 'practically disadvantaged by [their] exclusion from the proceedings.'" (Mot., Doc. 13 at 10) (quoting *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1295 (11th Cir. 2017)). Proposed Intervenors emphasize that their underlying challenge to Plaintiff's qualifications for Congress "would likely be an 'exercise in futility'" if the instant case were resolved in Plaintiff's favor such that the Proposed Intervenors could not litigate their interests in the OSAH proceeding. (*Id.* at 12) (citing *Chiles*, 865 F.2d at 1214). They add that such a result would not simply "practically disadvantage" their efforts to pursue that challenge; it would foreclose their challenge entirely. "[A]s a practical matter," a disposition of this lawsuit in Plaintiff's favor would therefore "impair [Proposed Intervenors'] ability to protect their interests." *Chiles*, 865 F.2d at 1214. Proposed Intervenors have accordingly satisfied the third prong for intervention as of right.

Finally, Proposed Intervenors argue that the current named Defendants will not adequately represent their interests because Defendants are state officials who have no stake in the outcome of the Proposed Intervenors' challenge.[5] The Court acknowledges that another federal district court recently came to a different

---

[5] Plaintiff does not argue that Proposed Intervenors fail to satisfy this requirement in the body of her brief in opposition to Proposed Intervenors' motion. However, in the Conclusion section of her brief, she states that Proposed Intervenors fail to satisfy the requirements to intervene as of right because they are "unable to meet their burden of showing inadequate representation." (Pl. Resp., Doc. 29 at 11.) The Court construes this as an argument that Proposed Intervenors fail to satisfy the fourth prong.

7

conclusion in *Cawthorn v. Circosta*, No. 5:22-cv-50, 2022 WL 511027 (E.D.N.C. Feb. 21, 2022), in which a group of voters raised a similar challenge to another candidate's qualifications to run for Congress in North Carolina. However, to the extent *Cawthorn* is similar, the Court does not find that court's decision persuasive on this point.

In *Cawthorn*, the court relied on Fourth Circuit case law applying a "heightened presumption" of adequate representation in cases where government defendants are charged with upholding the constitutionality of statutes. *Id*. at *1–2. In the case that court relied on, *North Carolina State Conference of the NAACP v. Berger*, the Fourth Circuit determined that "a more exacting showing of inadequacy should be required where the proposed intervenor shares the same objective as a governmental party." 999 F.3d 915, 932 (4th Cir. 2021) (internal quotations and citation omitted)). And it added that "[g]overnmental entities are entitled to [a] heightened presumption of adequacy" because "they are uniquely well-situated to defend a state statute under attack." *Id*. Applying that standard, the court in *Cawthorn* found that the proposed intervenors there failed to overcome the heightened presumption that they were adequately represented by the named defendants because the named defendants and the proposed intervenors shared the same ultimate objective of upholding a challenged statute. *Cawthorn*, 2022 WL 511027 at *1–2. Here, Plaintiff does not identify any cases in this Circuit applying a similar heightened standard to motions to intervene. And, more importantly, as Proposed Intervenors point out, under binding case law in

8

*this* Circuit, the burden to show inadequacy of representation is "minimal" and only requires intervenors to show that Defendants' representation of their interests *may* be inadequate. (Mot., Doc. 13 at 12) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), and *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

Although Proposed Intervenors acknowledge that Defendants presumably have an interest in defending the constitutionality of the Challenge Statute, they add that Defendants *do not* share Proposed Intervenors' ultimate objective of ensuring that the underlying challenge is successful. This point is illustrated by the fact that Defendants have not presented substantive arguments in opposition to Count IV of the Complaint, whereas Proposed Intervenors have so argued in their response brief. As the Eleventh Circuit has held, the fact that Defendants' and Proposed Intervenors' interests "are similar" does not necessarily mean that their "approaches to litigation will be the same." *Chiles*, 5 F.2d at 1214. And even if Defendants' objectives *were* the same as those of Proposed Intervenors, the presumption of adequate representation is only that — a presumption. "[L]ike the great majority of presumptions, at most it merely requires the presumed result *unless* some evidence is placed before the court tending to rebut it." *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1477 (11th Cir. 1993) (emphasis in original), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n,* 495 F.3d 1324 (11th Cir. 2007). "When such evidence exists, resort to the presumption is inappropriate, and

a court is obligated to make its own determination of whether the requirements of the rule are met." *Id.*

As Proposed Intervenors emphasize, Defendants "represent broader public and institutional interests, not shared by Intervenors, that will factor into how they respond to this action," and Defendants also "have no particular interest in ensuring Intervenors are able to pursue their particular challenge." (Mot., Doc. 13 at 13.) On this point, the Eleventh Circuit has held that intervention should be permitted in similar circumstances. For example, in *Meek v. Metropolitan Dade County*, 985 F.2d 1471 (11th Cir. 1993), the Eleventh Circuit granted intervention as of right when the proposed intervenors sought to challenge an at-large voting system for electing county commissioners. As the *Meek* Court observed there, "the County Commissioners had to consider the overall fairness of the election system to be employed in the future, the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue." *Id.* at 1478. Under the circumstances, the court found that the County Commissioners "were likely to be influenced by their own desires to remain politically popular and effective leaders" and that "[t]hese divergent interests created a risk that Dade County might not adequately represent the applicants" even though the County shared the proposed intervenors' objective of upholding the at-large voting system at issue. *Id.*

There is a similar "divergence of interests" between Defendants and Proposed Intervenors in this case. Further, under binding case law in this Circuit,

any doubts concerning the propriety of intervention should be resolved in favor of the proposed intervenors. *Meek*, 985 F.2d at 1478 (quoting *FSLIC v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215, 216 (11th Cir.1993)). Accordingly, the Court finds that Proposed Intervenors have met their minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate in that their interests may diverge from Proposed Intervenors' interests to some extent. The Court therefore **GRANTS** Proposed Intervenors' motion to intervene as of right.

### B. Permissive Intervention

Even if intervention as of right were not appropriate in this case, the Court finds that Proposed Intervenors would be entitled to permissive intervention. As Proposed Intervenors explain in their motion, permissive intervention is appropriate in this case because (1) Proposed Intervenors' interests in preventing Plaintiff from foreclosing the underlying challenge present questions of law and fact in common with the instant action, and (2) intervention will not unduly delay the case or prejudice the existing parties.

As an initial matter, Plaintiff does not dispute that Proposed Intervenors share a number of common defenses with Defendants, and that these defenses ultimately turn on the same legal issue — the constitutional validity of the Challenge Statute. Additionally, for the reasons discussed above, intervention would not cause undue delay or prejudice to the parties. *See New Georgia Project v. Raffensperger*, No. 21-cv-1229, 2021 WL 2450647 (N.D. Ga. June 4, 2021)

(holding that conditions for permissive intervention were satisfied, including that intervention would not cause "undue delay or burden" where proposed intervenors — who were various state and federal organizations associated with the Republican Party — moved to intervene within one to two weeks after the complaints were filed in matter involving challenge to Georgia Senate Bill 202). Proposed Intervenors have therefore satisfied the requirements for permissive intervention.

Once again, the Court acknowledges that the *Cawthorn* Court reached a different conclusion. However, the Court finds the situation in *Cawthorn* distinguishable. In *Cawthorn*, the court refused to grant permissive intervention on the theory that the motions then pending before the court had already been briefed, and any additional briefing from the proposed intervenors would unnecessarily delay the case. 2022 WL 511027, at *3. Conversely, in this case, the Proposed Intervenors have already submitted relevant briefs, such that the Court can consider them in advance of the April 8 hearing. Consequently, allowing Proposed Intervenors to join the case will not cause any undue delay or prejudice to the existing parties. Accordingly, the Court finds that Proposed Intervenors would be entitled to permissive intervention even if they were not entitled to intervene as a matter of right.

## IV. Conclusion

For the foregoing reasons, David Rowan, Donald Guyatt, Robert Rasbury, Ruth Demeter, and Daniel Cooper's Motion to Intervene as Defendants [Doc. 13] is **GRANTED**.

**IT IS SO ORDERED** this 7th day of April, 2022.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**